United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 24, 2003**

Charles R. Fulbruge III
Clerk

REVISED APRIL 28, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-50138
_____

ALICIA FABELA,

                              Plaintiff - Appellant,

versus

SOCORRO INDEPENDENT SCHOOL DISTRICT,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before DAVIS, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This retaliation case presents a sufficiency of evidence question. Plaintiff-Appellant Fabela was discharged from her position as campus secretary by Defendant-Appellee Socorro Independent School District(the District). Fabela contends that the District terminated her employment, in part, because she had filed a charge of sexual harassment with the Equal Employment Opportunity Commission (EEOC)in 1991.  Consequently, she contends that she was discharged in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3 *et seq*. (Title

VII). Fabela initiated this action alleging a sole claim of retaliation. The District moved for summary judgment on the grounds that Appellant failed to rebut the nondiscriminatory reason offered by the District for Fabela's dismissal. The district court granted summary judgment in favor of the District, finding that Fabela had failed to present sufficient evidence supporting a causal connection between her 1991 charge, and the termination of her employment in 1997. We find otherwise.

I.

Alicia Fabela began her employment with the District in 1986. Initially, Fabela worked as a secretary for the District itself, but in 1991 she became the campus secretary at Vista Del Sol Elementary School (Vista). The principal at Vista was Mr. Arturo Olivas. In February 1991, Olivas gave Fabela a poor work evaluation and recommended that she be terminated as an employee of the District. Shortly thereafter, Fabela filed a charge of discrimination and sexual harassment with the EEOC. Fabela alleged that Olivas had made unwelcome sexist and sexual remarks, and that when Fabela complained to Olivas about his behavior, he gave her a poor work evaluation in retaliation.

In a letter dated September 30, 1992, the EEOC informed Fabela that the evidence gathered by the EEOC in its investigation failed to establish a Title VII violation. Specifically, the letter noted that the investigation concluded that Fabela's claims were unsubstantiated, that her assertion

2

that she had complained to Olivas about his behavior was uncorroborated by witnesses, and that witnesses instead testified that Fabela was having problems at work because Olivas was displeased with her performance. In closing, the EEOC letter informed Fabela that the Commission was dismissing her charge, and that Fabela could pursue a civil remedy if she so chose. She declined to do so.

However, despite the EEOC's determination that Fabela's sexual harassment and retaliation charges against Olivas were unsubstantiated, Fabela was not discharged as Olivas had recommended. Instead, Assistant Superintendent Tom Marcee granted Fabela's request for an immediate transfer to another District school. Thus began Fabela's tenure at the Benito Martinez School.

The first five years that Fabela spent at Benito Martinez were apparently uneventful. During that time, Fabela received only positive evaluations from the principal, Ms. Mary Tucker. However, in 1996, Principal Tucker was replaced by Ms. Jo Reinhart. The record reflects that in contrast to Fabela's relationship with Tucker, the working relationship between Fabela and Reinhart rapidly became inharmonious. Reinhart first officially reviewed Fabela's work in March 1997, at which time she offered several critiques of Fabela's performance as campus secretary, and identified areas in which Fabela should improve.

On October 1, 1997  a significant incident occurred between Fabela and Reinhart. Reinhart ordered Fabela to leave campus and

3

drive to a print shop to pick up report card forms which Reinhart believed Fabela had failed to order in a timely fashion. Fabela did not go to retrieve the forms as instructed, but instead waited for them to be delivered the following day. Fabela contends that she told Reinhart that she could not drive to collect the forms because she had a migraine headache. Reinhart contends that Fabela refused to get the forms in deference to a slight headache and cross-town traffic. In any event, Fabela did not pick up the report cards.

The following day Reinhart and Fabela met to discuss the report card conflict and other issues. Both women agree that a second disagreement erupted between them at the October 2 meeting, during which Fabela became upset and left the school campus. Fabela avers that following the second incident with Reinhart, she went home and called the District's Director of Personnel Services, Lois Ordaz. Fabela sought Ordaz's advice about securing a transfer to another District school. Ordaz directed Fabela to report to Ordaz's office the following Monday, and to not return to work at Benito Martinez until after that time.

On Monday October 6, Fabela was informed by Ordaz that Reinhart had recommended her immediate discharge from the District's employ. Reinhart articulated her recommendation in a letter directed to Assistant Superintendent Marcee. In the letter Reinhart described the events of October 1 and 2 and outlined

4

several areas in which she was dissatisfied with Fabela's preformance as campus secretary, and ultimately recommended Fabela's immediate dismissal.[1]  Marcee concurred with Reinhart's decision to terminate Fabela, and Fabela's offical notice of dismissal was authored by Marcee.

Fabela appealed her termination, and on October 13, 1997, pursuant to the District's policy concerning at-will employees, the District conducted a "review session" to evaluate Fabela's termination.[2] The review session was conducted by Dr. Gary Brooks, who was appointed by the District to review Fabela's dismissal and determine whether rehiring Fabela would be in the District's best interest.[3] Fabela was present at the review session, and was represented by her counsel, Tony Conners.

---

[1] Reinhart's letter pointed to a number of deficiencies in Fabela's performance, including a lack of leadership as campus secretary; poor and ineffective organizational skills; an inability to meet deadlines and carry through on routine functions; a poor attitude and lack of initiative; and persistent insubordination.

[2] The District utilizes a multilayered complaint, grievance, and review process to respond to varying degrees of employee dissatisfaction. According to the deposition of Dr. Brooks, Fabela received a review session as opposed to an arbitration hearing because instead of filing an official complaint, Fabela merely asked for a review of her termination. Dr. Brooks averred that if an employee requests a review session, "the superintendent or his designee shall determine whether or not the dismissal is based on reasons that are arbitrary, capricious or discriminatory, and/or whether reinstating employment will be in the best interest of the school district."

[3] Dr. Brooks also designed the District's review and grievance process and served as the district arbitrator at the time of Fabela's termination.

Assistant Superintendent Marcee, Lois Ordaz, and Principal Reinhart all appeared to represent the position of the District. During the session, Marcee "took the lead" in addressing the questions which Dr. Brooks directed at the District, and in particular it was Marcee who produced for Dr. Brooks documents related to Fabela's employment with the District. The documents which Marcee produced included, *inter alia*, the EEOC determination letter received by the District which described Fabela's 1991 sexual harassment charge as "unsubstantiated".[4] Fabela and her attorney Mr. Conners both aver that when Dr. Brooks asked the District why it wished to terminate Fabela, Marcee responded that Fabela was a "problem employee", and cited among other instances of "problem" behavior the fact that Fabela had filed an unsubstantiated EEOC claim in 1991. According to Appellant and her attorney, Lois Ordaz was then directed by Marcee to read the EEOC determination letter aloud during the review session, and then present the letter to Dr. Brooks.

On October 17, 1997, Dr. Brooks returned a finding in support of the District's decision to dismiss Fabela. In particular, Dr. Brooks concluded that Reinhart had been unhappy with Fabela's job performance since December 1996, that Reinhart's expectations of Fabela were reasonable, and that it

---

[4] In support of the District's decision to terminate Fabela's employment, Marcee also produced past performance reviews from Principals Olivas and Reinhart. Marcee did not offer the five favorable reviews Fabela received from Principal Tucker.

would not be in the best interest of the District to reinstate Fabela.

In January 1998, Fabela filed a charge with the EEOC alleging both age discrimination and retaliatory firing in connection to her 1991 EEOC complaint. The EEOC found her age discrimination complaint to be unsubstantiated, but did find that the evidence showed there was reasonable cause to believe that Fabela was retaliated against based on her 1991 charge of discrimination. Upon the conclusion of the EEOC's investigation Fabela received notice of her right to sue, and she initiated this action against the District asserting that she was discharged in retaliation for filing the 1991 charge, which is a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a)(2000). The district court granted summary judgment in favor of the District, finding that Fabela failed to provide evidence establishing a causal connection between the 1991 charge and her 1997 dismissal. Appellant here appeals that ruling.

## II.

This Court reviews *de novo* the district court's grant of summary judgment, applying the same standard as the district court. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001). Thus, here, to determine if summary judgment was properly entered in favor of the District, we review the record in the

light most favorable to Fabela, and resolve all reasonable inferences in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). Moreover, we will affirm the district court's judgment only if we find that those facts which are material to Fabela's claims are undisputed by the parties, as it is well settled that at the summary judgment stage of litigation the function of the trial bench or reviewing court is not to step into the stead of the jury and weigh the evidence in a search for truth, but is instead to determine whether there exists a genuine issue for trial.[5] *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002)(stating in deciding whether summary judgment was properly granted "this court will not weigh the evidence or evaluate the credibility of witnesses.").

Title VII prohibits retaliation against employees who engage in protected conduct, such as the filing of a charge of sexual harassment. 42 U.S.C. § 2000e-3(a) (2000); *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 325(5th Cir. 2002). To

---

[5]For a fact to be material, it must be probative as to the legally relevant questions at hand, and for the dispute to be genuine, the disputing party must submit evidence which could serve as a reasonable basis for finding in the disputing party's favor. *Beck v. Somerset Technologies*, 882 F.2d 993 (5th Cir. 1989). Thus, to find that a genuine triable issue exists, we must find that a fact which may effect the disposition of the claims before us is in dispute between the parties, and that the evidence presented concerning that fact is such that a reasonable jury could return a verdict in favor of the non-movant as to the issue in contest. *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 408 (5th Cir. 2002).

establish a claim of retaliation under Title VII, a plaintiff must demonstrate that she:(1)she engaged in a protected activity; (2)that an adverse employment action occurred; and (3)that a causal link exists between the protected activity and the adverse employment action. *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001).

Here, it is undisputed that Fabela engaged in the protected activity of filing a Title VII charge with the EEOC, and it is also undisputed that Fabela was subsequently terminated from her employment. Therefore, the sole issue in contest between the parties is whether Fabela's termination was causally linked with the filing of her 1991 EEOC complaint. The district court found that Fabela failed to present evidence supporting a causal link between these two events such that a reasonable jury could believe they were connected. We, however, disagree, finding instead that Appellant established the elements of her claim through the use of direct evidence, and that she adequately supported her claim such as to create a genuine issue for trial.

### A. Direct Evidence - the "Mixed Motive" Path

A plaintiff alleging Title VII retaliation may establish her case for causation in one of two ways: she may either present direct evidence of retaliation, which is also know as the "mixed-

motive" method of proving retalitory motivation; or she may provide circumstantial evidence creating a rebuttable presumption of retaliation. *Fierros v. Texas Department of Heath*, 274 F.3d 187, 192 (5th Cir. 2001); *see Price Waterhouse v. Hopkins*, 490 U.S. 228 (1988). Usually, in the context of a retaliation claim, the employer refrains from expressly stating that an impermissible criterion influenced his decision to expose the plaintiff to an adverse employment action, and so direct evidence of an employer's allegedly retaliatory intent is rarely available. As a result, we have long recognized the well-trod path by which a plaintiff may demonstrate retaliatory intent through the use of circumstantial evidence and the famed *McDonnell Douglas* burden-shifting framework. *Montemayor v. City of San Antonio,* 276 F.3d 687 (5th Cir. 2001); *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994); *McDonnell- Douglass Corp. v. Green*, 411 U.S. 792 (1973). Because of the general lack of availability of direct evidence of retaliatory intent, plaintiffs alleging retaliation most often must travel the less advantageous circumstantial evidentiary path.[6] *Portis,* 34 F.3d at

---

[6] Under the *McDonnell Douglas* burden-shifting framework, a plaintiff bears the burden of establishing her *prima facie* case through circumstantial evidence of a retaliatory motive. If the plaintiff succeeds in offering circumstantial evidence in support of each element of her claim, she creates a rebuttal presumption of retaliation, and the burden shifts to the employer to demonstrate a legitimate reason for the adverse employment action. If the employer produces evidence of a legitimate reason for the action, the burden shifts again to the plaintiff to rebut

328.

However, in the unusual instance where a plaintiff is able to support the elements of her claim with direct evidence of a retaliatory motive, the *McDonnell Douglas* framework does not apply. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984)(stating, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Fierros v. Texas Dept. of Health,* 274 F.3d 187,192 (5th Cir. 2001)(finding that if a "plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the McDonnell Douglas framework does not apply.")*citing Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). Instead, in such "direct evidence" cases, once the plaintiff has submitted evidence that retaliation was among the motives which prompted the adverse action, the "burden of proof shifts to the employer to establish by preponderance of evidence that the same decision would have been made regardless of the forbidden factor." *Id* at 192 *(quoting, Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993))(internal quotation marks omitted).

The case at bar presents such a circumstance. This Court has

_____

the employer's non-retaliatory rationale. *See Montemayor,* 276 F.3d at 692.

11

defined "direct evidence" as evidence which, "if believed, proves the fact [in question] without inference or presumption." *Portis,* 34 F.3d at 328-29(*quoting Brown*, 989 F.2d at 861). In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but *a* basis - for the adverse employment action. *Fierros,* 274 F.3d at 192; *see also Portis,* 34 F.3d at 328-29.

Here, the fact in question is whether Marcee's decision to terminate Fabela's employment was motivated, in part, by the fact that Fabela had previously filed an EEOC complaint. In support of her contention that an improper criterion served as a basis for Marcee's decision to dismiss her, Fabela presented evidence that Marcee stated as much when asked by Dr. Brooks to justify his decision to discharge Fabela at the October 13 review session. Specifically, both Fabela and her attorney, Mr. Conners, aver that during the review session Marcee described Fabela as a "problem employee", and that Marcee pointed to the fact that Fabela had filed an "unsubstantiated" EEOC complaint in 1991 as evidence of Fabela's troublesomeness. Fabela and Conners also aver that during the review session, to further underscore the District's "problem employee" rationale for discharging Fabela, Marcee directed Lois Ordaz to read the 1992 determination letter.

The district court correctly identified this evidence as

12

direct evidence, but the district court nevertheless concluded that this evidence, standing alone, was insufficient to allow a reasonable jury to find a causal connection between the EEOC charge, and Fabela's dismissal. However, in drawing this conclusion the district court erred by failing evaluate the evidence in isolation. Instead, the district court evaluated Fabela's direct evidence for persuasiveness as compared to the record as a whole. Specifically, the district court stated:

> The [c]ourt concludes that the aforementioned [direct] evidence, standing alone, would not allow a reasonable jury to believe that Plaintiff was the victim of unlawful retaliation. In particular, the Court cannot consider this issue without also taking into account the undisputed facts as revealed by the summary judgment record. For instance, Plaintiff's termination occurred more than six and one-half years after Plaintiff filed the 1991 Charge and more than five years after the EEOC's determination pertaining to that charge....

Thus, in deciding whether Fabela had presented direct evidence that was sufficient to allow her to bypass the *McDonnell Douglas* framework, the district court weighed Fabela's direct evidence against other facts on record, and concluded that a reasonable jury would not be persuaded by Fabela's evidence in light of the record as a whole.

However, whether a reasonable jury would be persuaded by Fabela's evidence in light of the record as a whole is not the correct question to ask when determining whether Fabela has

succeeded in producing direct evidence sufficient to allow her to avoid the *McDonnell Douglas* framework. In deciding whether Fabela established the element of causation under the direct evidence path, the district court must refrain from weighing the evidence and preemptively determining whether and which inferences a reasonable jury is likely to draw. Instead, in deciding which evidentiary framework applies, the district court must ask whether the direct evidence, *truly* standing alone, is sufficient to support the conclusion that a nexus exists between the protected activity and the adverse employment action. *See Barrett Computer Services, Inc. v. PDA, Inc*. 884 F.2d 214, 218(5th Cir. 1989)(holding that, "[a]lthough more concrete evidence [supporting an element of the nonmovant's claim] would have been preferable, the evidence presented suffices to establish the existence of a genuine fact issue... After all, in summary judgment proceedings, '[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter...Rather, he or she only assesses whether there is a 'genuine issue as to any material fact....''.")(*quoting*, *Anderson*, 477 U.S. at 249, and Fed.R.Civ.P. 56(c))(internal citations omitted). Thus, if the direct evidence alone is sufficient to support a causal nexus, then the plaintiff has established the element of causation, and the burden shifts to the defendant to prove that he would have arrived at the same

14

decision even had he not considered the improper criterion.

Therefore, the question at hand is whether a reasonable jury could believe that a causal connection existed between the EEOC charge and Fabela's dismissal, assuming the jury believes - as here we must assume they would - that Marcee described Fabela as a problem employee because she filed the unsubstantiated complaint, and that Fabela was being terminated for being a problem employee. We find that a reasonable jury, passing on this evidence alone, could indeed conclude that Fabela was dismissed, in part, because she filed the unsubstantiated sexual harassment charge.[7] We conclude, therefore, that Fabela has produced sufficient direct evidence of a retaliatory motive to establish directly the causation element of her claim. *See Portis*, 34 F.3d at 331. Moreover, because Fabela has satisfactorily alleged and supported - with direct evidence - the elements of her case, she is permitted to bypass the *McDonnell Douglas* burden-shifting framework. *Id*. Consequently, the burden is shifted to the defendant to disprove her claim.

### B.   The District's Burden

[7] We emphasize also that to successfully establish the element of causation in the direct evidence rubric, Fabela's evidence does not have to support the conclusion that retaliation was the only motive or even that it was the determinative motive, only that it was among the motivating factors which led to the adverse action. *Fierros,* 274 F.3d at 192; *See also, Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989).

Because Fabela has met her burden with direct evidence, the onus falls to the District to prove that despite Marcee's inclusion of the improper criterion among the reasons proffered for terminating Fabela, the District would have reached the same employment decision had Fabela never filed the 1991 charge.[8] To meet its burden, the District must prove that it would have terminated any employee who performed or behaved as Fabela had, regardless of whether that employee had filed an EEOC charge. *Portis*, 34 F.3d at 330.

Towards that end, we observe that the record reflects ample evidence that the District was primarily motivated to terminate Fabela because of Reinhart's dissatisfaction with Fabela's job performance.[9] However, providing unrebutted evidence of a

---

[8] The district court did not analyze the summary judgment evidence within the direct evidence framework, as the district court erroneously concluded that Fabela was not entitled to avoid the *McDonnell Douglas* framework.

[9] We note here that the district court appears to have afforded considerable weight to the passing of time between the initial filing of the EEOC charge and Fabela's ultimate dismissal. However, while timing can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is "suspicious[ly]" proximate, the contrapositive inference does not necessarily follow. *See e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). That is, conclusions drawn from a lack of suspicious timing are less compelling, and, of course, at this stage of litigation all reasonable inferences are to be drawn in the favor of Fabela, rather than against her. Moreover, we think it plain that if Fabela's evidence regarding Marcee's statements at the review session are to be believed, when Marcee listed the protected activity as among the factors leading to his decision, whatever

16

legitimate reason for the adverse employment decision is not sufficient to secure summary judgment under the direct evidence calculus. Insofar as Marcee raised the specter of the improper criterion as a motivating factor, it is up to the District either to disprove that the improper criterion was a factor in the employment decision, or that the same employment decision would have been made nonetheless. *Fierros*, 274 F.3d at 192. Creating a triable issue as to these questions, as here the District clearly has, is not enough for the District to prevail on its dispositive motion. *See Fierros*, 274 F.3d at 195 (holding that "Fierros's affidavit by itself precludes summary judgment because it presents a genuine issue of material fact regarding whether '[retaliatory] animus in part motivated or was a substantial factor in the contested employment action;'" *quoting*, *Brown*, 989 F.2d at 861).

Instead, in the mixed motive context, the fact that the District has supplied and supported a legitimate reason for

---

temporal distance lapsed between the time that Fabela had filed the complaint and the time of the adverse action was rendered irrelevant.

Similarly, the district court draws a negative inference from the absence of particular evidence which the district court would have found to be more indicative of a causal connection. For example, the district court notes that Fabela fails to contend that she was harassed or intimidated in the intervening years between the charge and the dismissal. However, in ruling on the District's motion for summary judgment, it is obviously not appropriate for the district court to draw against Fabela, the nonmovant, a negative inference premised on the absence of specific evidence.

discharging Fabela merely means that the District, too, has met its requirement to show that judgment as a matter of law cannot be rendered against it, and the issue is ripe for trial.


### C. Rule 56(c)


Having found that Fabela has produced direct evidence sufficient to sustain the three elements of her retaliation claim such that a reasonable jury could return a verdict in her favor, the path of her litigation is clear: we review the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits to determine whether a genuine issue of material fact remains in dispute. Fed.R.Civ.P. 56(c); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000). Here, it is plain that the parties at bar are in dispute regarding two facts: first, whether Marcee's decision to discharge Fabela was motivated, in part, because she filed an EEOC charge; and second, whether the District would have discharged any employee who preformed as Fabela had, regardless of whether that employee had filed a charge with the EEOC. The resolution of these two issues is material to the District's liability under Title VII, and both Fabela and the District have submitted sufficient evidence to render the dispute genuine. Consequently, these questions fall soundly within the province of

18

the jury, and so we will leave it to the jury to answer them.

III.

We conclude that the district court erred in granting summary judgment to the District.  The judgment of the district court is hereby REVERSED, and the case is REMANDED for proceedings consistent with our holding herein.