**Terri JONES**

v.

**CONTINENTAL CUISINE, INC.**

No. CIV.A.02–2663.

United States District Court,
E.D. Louisiana.

July 2, 2004.

David Augustus Capasso, Capasso & Brancato, New Orleans, LA, for Terri Jones, plaintiff.

Salvador Anzelmo, Law Office of Salvador Anzelmo, Gilbert R. Buras, Jr., Gilbert R. Buras, Jr., Attorney at Law, New Orleans, LA, for Continental Cuisine, Inc., improperly named as The Corner Oyster Bar and Grill, defendant.

### REASONS FOR JUDGMENT

LEMMON, District Judge.

Plaintiff Terri Jones, an African–American, has sued defendant Continental Cuisine, Inc., alleging that Continental violated Title VII of the Civil Rights Act of 1964 by creating a hostile work environment by use of a racial slur and by firing her

because of her race. The non-jury case was tried on June 28, 2004.

## A. Evidence submitted.

Continental is the owner of many restaurants, including the Corner Oyster Bar and Grill. The parties stipulated that plaintiff Terri Jones began working for Continental at the Oyster Bar on April 23, 1999.

When Jones began working at the Oyster Bar, her manager was Diane Guyton, an African–American. Jones and other employees testified that the restaurant's atmosphere was collegial and friendly during Guyton's tenure. John Santopadre, president of Continental, testified that he fired Guyton in September 2000 shortly after he learned she had converted the restaurant's funds to her own account. Santopadre hired Brad Darr in December 2000 to replace Guyton. Darr had over ten years of experience in the restaurant industry, and had worked as an assistant manager at several restaurants in New Orleans and Memphis. Darr's immediate supervisor was Brenda Darr, his mother, who had worked for Santopadre for eight years as the supervisor of three of his numerous restaurants.

Santopadre testified that he hired Darr to practice "good management." Darr confirmed at trial that when he was hired, he and Santopadre discussed ways to maximize revenue at the restaurant. He and Santopadre denied discussing problems with the waitstaff. Santopadre employs many African–Americans, including several in managerial and supervisory roles, and enjoys a "normal relationship" with them.

Prior to his first day at work, Darr anonymously visited the Oyster Bar several times to observe its operations. During these visits, he noticed that some employees had a lackadaisical attitude about their jobs. On December 11, 2000, four days after he began work, Darr held a "mandatory meeting" with the entire waitstaff of the restaurant to inform the waitstaff of certain new policies and procedures that were being implemented. At this time, all except one of the waitstaff at the restaurant were African–American.

There was conflicting testimony at trial about what transpired at the December 11, 2000 meeting, which took place in the dining room of the restaurant during working hours. Darr testified that almost as soon as the meeting began, three or four members of the waitstaff became boisterous and "went crazy." They balked about some of the new policies Darr intended to implement, such as requiring the waitstaff to put the restaurant's chairs on the tables at night to facilitate mopping the floor, and refusing to include the tip on the customers' bills. The staff made numerous inquiries about the reason for Guyton's firing. Because the employees would not settle down, Darr testified that he slammed his fist on the table at which he was seated and demanded that the waitstaff listen to him as he was the new manager. He also informed them that, if need be, he had the authority to fire each of them, and could decide to shut the entire restaurant if necessary. Although Darr admits slamming his hand down on the table to get the attention of the employees, he denied using any racial slurs.

Jones' trial testimony about the December 11, 2000 meeting was that Darr told the staff that Santopadre had told him to "get rid of all you niggers," but that he was trying to give them a chance. She told Darr that he could not talk to her in that way. Jones recalled that after the meeting, Darr and a busboy, Damian Shelmire, had an altercation, and Darr apologized to Shelmire about his behavior. Jones testified that after the meeting, she was very uncomfortable and hurt by the use of the racial slur. The day after the meeting, she complained to the Equal Em-

ployment Opportunity Commission (EEOC); significantly, the EEOC complaint contains no mention of racial slurs.

Connie Conway, a member of the waitstaff, testified that the meeting began without any raised voices. She testified that Darr then exploded at them, slammed the table, and said he did not want to hear their complaints. Darr shouted that that he was doing the waitstaff a favor by not firing them. She recalled that Darr used the "n word" during this tirade. Conway testified that the outburst was loud enough to cause the restaurant's customers to turn around to observe the events at the table.[1]

Shelmire, a former busboy at the Oyster Bar, testified that the December 11, 2000 meeting started well, and Darr told the waitstaff that they would make more money during his tenure. Shelmire testified that Darr then went on a "power trip" because he felt the waitstaff was not listening to him. Shelmire recalled that Darr informed them: "Look, the owner told me I can fire all you niggers." Shelmire immediately objected, and all of the waitstaff became upset. Shelmire testified that Darr then pulled him aside, shook his finger at him, and said that the Oyster Bar was his restaurant, and he could run it as he wished. He told Shelmire that if he disagreed, Darr would fire him. Shelmire believed that his was the equivalent of a

termination, and did not return to work.[2] Shelmire testified that when he visited the Oyster Bar again in the second week of January 2001, all of the employees he observed were white. No other testimony was presented relating to the hiring of replacement staff.

Although Jones' Complaint contains allegations of numerous incidents of racial slurs, the testimony is unequivocal that the December 11, 2000 meeting was the only time any of the witnesses heard Darr use any such language. Santopadre, who visits the restaurant once or twice a week, testified that no employees ever complained to him about the use of a racial slur at the meeting or otherwise. If Santopadre had determined that Darr used racial slurs, he testified that he would have fired him.

Darr testified that after the December 11, 2000 meeting, Jones was chronically tardy. Darr testified that Jones had been late for work on several occasions when Guyton was the manager at the restaurant, but because all employees started with a "clean slate" when he arrived at the restaurant, those tardiness episodes did not figure in his decision to ultimately terminate her.[3] Trial Exhibit "B" consists of a computer printout showing that Jones was late for work on December 10, 11, 14, 15, 16, 21, 23, 24, 25,[4] and 26, 2000.[5] Although

---

1. Conway worked at the Oyster Bar for several more months, and was ultimately fired after a physical altercation with another employee.

2. Darr testified that he spoke to Shelmire after the meeting, and apologized for raising his voice and hitting his fist on the table. He denied firing Shelmire that day, and terminated him after he did not show up when he was next scheduled to work.

3. The Oyster Bar was formerly called the "Riverboat Café & Bar." Trial Exhibit "A" consists of "Riverboat Café & Bar Late Reports" reflecting that Jones was late on six

occasions while Diane Guyton was supervising her.

4. There was conflicting testimony at trial about whether Jones was late to work on December 25, 2000. Darr was on vacation in Memphis that day, but testified that the Oyster Bar was open for business and that he spoke to Leslie, his manager at the restaurant, at 9:00 a.m. Conway and Jones testified that they arrived at work on time, found the restaurant was locked, went to a bar, and only when they later returned after 11:00 a.m. did the chef arrive and unlock the door.

5. Darr testified that each employee is given a code which the employee keys into a time

Jones tendered excuses for her lateness, Darr testified that they were not valid. Additionally, the records reflect that Jones did not show up for work at all for two shifts. Darr testified that he had verbally reprimanded Jones when she was late, and had stressed to the entire waitstaff the necessity for punctuality. Jones denied at trial that Darr spoke to her about her tardiness, and testified that the first time Darr spoke to her at all after the December 11, 2000 meeting was to fire her on December 29, 2000. Jones denied missing any shifts in December 2000, and testified that she was not late even once during that month.

Exhibit "C," the Oyster Bar's "Separation Notice Alleging Disqualification," reflects that Jones was terminated for being late "10 out of 19 shifts with 2 no calls—she had no proper excuses." Jones testified that she received a letter in the mail from the restaurant after she was fired that apologized to her, but Santopadre and Brenda Darr denied that such a letter was ever sent.

## B. Analysis.

Title VII prohibits an employer from "failing or refusing to hire or ... [from] discharging, or otherwise discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Jones alleges that her workplace was racially hostile, and that she was fired due to her race.

### 1. Hostile work environment.

■■■■ In analyzing whether Jones was subjected to a racially hostile working environment, the court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Only when the workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" is Title VII violated. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Conduct "that is not severe or pervasive enough to create an objective hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Thus, the "utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

■■■ The only evidence offered by Jones to support her claim that a racially hostile work environment existed at the Oyster Bar is Darr's alleged use of the "n word" during the meeting of December 11, 2000. Even if Darr did use this shameful term at that meeting, the evidence adduced at trial

---

clock when the employee arrives and leaves work. Exhibit "B" reflects the times Jones keyed in an out of work. Darr noted that the handwritten comments on Exhibit "B" showing the number of minutes Jones was late are inaccurate in a few instances, and Jones was actually later than reflected because her afternoon shift began at 2:00 p.m., not 2:30 p.m. as reflected on the printout.

reflects that it was an isolated offensive utterance, and Jones herself admitted that Darr did not use it before or after the meeting. There is no evidence that Jones was subjected to a hostile work environment.[6]

### 2. Discriminatory discharge.

A plaintiff may satisfy her burden of proving she was discharged due to unlawful discrimination by presenting either direct proof of discriminatory intent or through the indirect burden-shifting test of *McDonnell–Douglas Corp. v. Green.*[7] *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994).

■ Jones contends that the December 11, 2000 comment is direct evidence of discrimination. In *Patel v. Midland Memorial Hospital & Medical Center,* 298 F.3d 333 (5th Cir.2002), *cert. denied,* 537 U.S. 1108, 123 S.Ct. 885, 154 L.Ed.2d 780 (2003), the Fifth Circuit held that under the "stray remarks" doctrine, a workplace slur does not provide sufficient evidence of discrimination unless it is related to the plaintiff's protected class, proximate in time to the adverse employment decision, made by an individual with authority over the plaintiff, and related to the employment decision at issue. *Id.* at 344. The court finds that even if Darr used the term "n word," it was a stray remark that does not furnish direct proof of discriminatory intent. The remark came three weeks before Darr was fired. It was not directed specifically at her, but was a general comment about the entire waitstaff. The re-

mark was unrelated to the decision to ultimately fire Jones.

■ Jones may also establish a *prima facie case* of discrimination by proving that she belongs to a protected class, that she was qualified for the job from which she was terminated, that she was terminated despite her qualifications, that after her termination her employer hired a person outside of the protected class or retained those with comparable or lesser qualifications. *Johnson v. Louisiana,* 351 F.3d 616, 621 n. 6 (5th Cir.2003). If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence that "the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant articulates a legitimate nondiscriminatory reason, the focus shifts to the ultimate question of whether the plaintiff can prove that the defendant intentionally discriminated against the plaintiff. A *prima facie* case plus sufficient evidence of pretext may permit the court to find unlawful discrimination, even without additional independent evidence. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ Even assuming that Darr used the "n word," and that he threatened to fire all African–Americans, the court finds that Jones has failed to carry her burden of proving that she was fired due to her race.

---

**6.** Additionally, numerous cases have specifically held that one use of the "n word" does not render a work environment racially hostile. *See, e.g., Friend v. Interior Systems, Inc.,* No. 00–2170, 2002 WL 1058210, at *21 (N.D.Tex., May 23, 2002) (single use of "n word" by a coworker did not result in a hostile work environment), *aff'd,* 69 Fed. Appx. 659, 2003 WL 21356055 (5th Cir.2003)

(table); *Hardy v. Federal Express Corp.,* No. 97–1620, 1998 WL 419716, at *7 (E.D.La. July 21, 1998) (single use of "n word" by supervisor did not render a work environment racially hostile).

**7.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

It is doubtful that Jones even satisfied her burden of proving a *prima facie* case, for she presented no evidence she was replaced by someone outside her protected class. Additionally, the court accepts defendant's legitimate, nondiscriminatory reason for her termination: her chronic lateness. Jones provides no evidence this reason is pretextual, and the court finds that she failed to prove that defendant intentionally discriminated against her.

### 3. Retaliation.

 Jones' Complaint alleged that she was fired in retaliation for complaining to the EEOC. *See* Complaint at ¶ 13.[8] Title VII prohibits retaliation against employees who engage in protected conduct. 42 U.S.C. § 2000e–3(a). To establish a retaliation claim, a plaintiff must demonstrate that she engaged in a protected activity; that an adverse employment action occurred; and that a causal link exists between the protected activity and the adverse employment action. *Fabela v. Socorro Independent School District*, 329 F.3d 409, 414 (5th Cir.2003). Jones testified at trial that she went to the EEOC the day after Darr used the "n word." Aside from Jones' testimony that another employee told her that Darr was aware she had gone to the EEOC, there was no evidence presented at trial that Darr knew about the EEOC complaint before he fired her. Even if he was aware of the EEOC complaint, there is no evidence of a causal link between the EEOC complaint and his decision to fire Jones.

### C. Conclusions.

The evidence adduced at trial demonstrates that defendant did not violate Title VII. The court accordingly renders judgment in favor of defendant Continental

---

8. Jones' counsel did not reference this claim in his opening and closing statements at trial.

Cuisine, Inc. and against plaintiff Terri Jones.

The court discusses the claim for the sake of completeness.