Jaime **HERNANDEZ**, Plaintiff,

v.

**Postmaster General John E. POTTER**, Defendant.

No. EP–05–CV–0226–KC.

United States District Court, W.D. Texas, El Paso Division.

July 16, 2007.

Rebecca L. Fisher, Rebecca L. Fisher & Associates, McGregor, TX, for Plaintiff.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Defendant.

## ORDER

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence and Motion for Summary Judgment. For the reasons set forth herein, Defendant's Motion to Strike is **DENIED** in part and Defendant's Motion for Summary Judgment is **DENIED.**

## I. BACKGROUND

In August 1994, Plaintiff Jaime Hernandez ("Hernandez") began his employment with the United States Postal Service as a Mail Processing Clerk at the El Paso Processing and Distribution Center in El Paso, Texas. Def.'s Proposed Stipulated Facts ¶ 10. From the time of his employment, Hernandez was a member of the union and served as a union steward. *Id.* ¶ 11. As a steward, Hernandez monitored and enforced the contract between the union and the Postal Service. *Id.* ¶ 12. His duties as a steward also included representing employees in the EEO process. *Id.*

Beginning in January or February of 2004, Hernandez, at the behest of Manager of Delivery Operations Richard Lujan ("Lujan"), assisted a co-worker named Katherine Stout ("Stout") with her sexual harassment claim against the Postal Service. Pl.'s Statement of Facts ¶¶ 20, 64–66. On February 21, 2004, Plaintiff sought the assistance of Human Resources Manager, Angie Burns ("Burns"), to provide him with a copy of the investigative report related Stout's sexual harassment claims. *Id.* ¶ 64. On March 17, 2004, because Burns had not provided him any assistance, Plaintiff sought the assistance of Steven Leavey, Corporate Personnel Manager, in providing him with a copy of the investigative report pertaining to Stout's claims. *Id.* ¶ 65. On March 28, 2004, Supervisor Ralph Chavez hand delivered a letter to Hernandez from Burns in response to his request for the investigative report. *Id.* ¶ 66.

On March 30, 2004, Hernandez began work at 10:30 p.m. Pl.'s Statement of Facts ¶ 2. After clocking in, he went to his assigned machine (DBCS # 6), stopping at the storage area to get a General Purpose Mail Container, which he pushed to his machine. *Id.* Hernandez began his work by downloading sort plans and printing carrier labels. *Id.* ¶ 3. At this time, Hernandez' supervisor, Jim Thomas ("Thomas"), inquired why Hernandez was not running the DBCS machine. *Id.* ¶ 4. Hernandez explained that he did not have a partner and was in the process of printing

labels so he could not start the DBCS machine, nor did he yet have the time to pick up his mail to place in the machine. *Id.* Thomas walked away, returning with supervisor Larry Barragan ("Barragan") and telling Barragan that he wanted Hernandez to run the machine. *Id* ¶ 5.

At this point, Hernandez requested the presence of a union representative and Barragan summoned Manuel Renteria ("Renteria"). In the mean time, Hernandez explained to Barragan that he believed that Thomas was harassing him and asked Barragan to order Thomas to refrain from bothering him. *Id.* ¶ 6. Renteria and Thomas met Barragan and Hernandez by another DBCS machine, where Renteria asked Barragan and Thomas to assign someone to assist Hernandez in running the DBCS machine. *Id.* ¶ 7. Thomas refused and a discussion ensued regarding the safety and staffing violations involved in requiring a Mail Processor like Hernandez to operate the machine alone. *Id.* A conversation about contract and grievance settlements followed. *Id.* Renteria requested that manager Lujan be brought into the conversation but he was unavailable, as he was away from the building. *Id.*

Thomas then told Hernandez that he would issue him an order to run the machine alone and asked Hernandez if he would obey him. *Id.* ¶ 9. Hernandez said that he would, but he wanted the instructions in writing. *Id.* Hernandez insists that the operation of the DBCS machine alone is a safety violation, a violation of local staffing rules, and has provided a variety of evidence in support of that claim. *Id.* ¶¶ 31, 87, 96, 99, 168, 171, 204–07. According to Defendant, the Postal Workers Union and the Postal Service reached an agreement on this issue with normal staffing of the DBCS machine requiring two employees, with one employee operating the machine when starting up or

shutting down or during low volume. Def.'s Proposed Stipulated Facts ¶ 17.

Thomas then told Renteria that if Hernandez would not run the machine, he would "take [him] off the clock." *Id.* ¶ 22; Pl.'s Statement of Facts ¶ 8. Hernandez did not operate the machine so Thomas took Hernandez' time card and ID badge and escorted him out of the building. Def.'s Proposed Stipulated Facts ¶ 22. Lujan returned to the building around this time and requested that the supervisors provide him written statements regarding the incident. *Id.* ¶ 27. Lujan conducted a pre-disciplinary hearing on April 11, 2004, and issued a Notice of Proposed of Removal ("Notice") on April 26, 2004. *Id.* ¶¶ 30, 32. The Notice informed Hernandez that he could submit information to Plant Manager Juan Flores ("Flores") to challenge the removal. *Id.* Hernandez did so. *Id.* ¶ 33. Flores considered the documentation provided and issued a Letter of Decision on June 18, 2004, advising Hernandez of his removal. *Id.*

On December 8, 2004, there was an arbitration hearing on the issue of Hernandez' termination, and, on December 21, 2004, the arbitrator handed down the decision upholding Hernandez' termination, finding that Hernandez had been insubordinate. Def.'s Mot. for Summ. J., Ex. 6, p. 1.

According to Lujan, the usual procedure for discipline is that an immediate supervisor issues the discipline. Pl.'s Statement of Facts ¶ 210. Thomas was Hernandez' immediate supervisor; yet, Thomas did not propose the termination. *Id.* ¶¶ 85, 210. Rather, Lujan proposed it. *Id.* ¶ 85. In addition, Lujan told Hernandez' colleague, Francisco Chavez ("Chavez"), that the decision to remove Hernandez had come from "higher up." *Id.*

According to union steward and former union president Chavez, at least twelve other postal employees had, on occasions

prior to Hernandez' termination, refused to follow orders and were deemed insubordinate; yet, they were not terminated, or even disciplined. Decl. of Francisco Chavez, Jr. ¶ 15; Pl.'s Statement of Facts ¶¶ 54, 68. These individuals included supervisors Ralph Chavez, George Hernandez, Rosemary Alvarado, Larry Barragan, Richard Lujan, Edmundo Luna, Jim Thomas, James Florence, and Danny Ramirez. Employees included Harry Lee ("Lee"), Thomas Gonzales ("Gonzales"), and Orlando Griego ("Griego"). Decl. of Francisco Chavez, Jr. ¶ 15; Pl.'s Statement of Facts ¶ 54; Decl. of Dan Hvizdak ¶ 12. Lee, Gonzales, and Griego were ordered by a supervisor to stay for two hours of overtime; however, none of them stayed as ordered and none of them was terminated. Decl. of Dan Hvizdak ¶ 12.

In a letter dated September 16, 2003, Plaintiff informed various officials, including United States Postmaster General John Potter, about several incidents of racial discrimination at the El Paso facility. Pl.'s Statement of Facts ¶ 61. Soon after, on or about October 6, 2003, Plant Manager Flores was assigned to a Service Team detail for the Rio Grande performance cluster. *Id.* ¶ 62. Flores returned two months later, and, within three months of his return, Hernandez was escorted out of the building for insubordination. *Id.* ¶ 63

Hernandez had previously been disciplined by the Postal Service, having been suspended for seven days. Def.'s Proposed Stipulated Facts ¶ 9. The suspension was later reduced to a warning. *Id.* Based upon the incomplete deposition excerpt provided by Defendant, it appears that Hernandez' suspension was somehow related to an EEO claim, in which he was involved. Def.'s Mot. for Summ. J., Ex. 7, p. 39. In response to the discipline, Her-

nandez filed a grievance. *Id.* Though the excerpt is incomplete, it appears that Hernandez prevailed upon the grievance, settled the EEO claim, and was paid for the seven days that he was suspended. *Id.*

On June 15, 2005, Hernandez filed his Complaint claiming "race, national origin discrimination, and retaliation." Pl.'s Compl. 6. In his Response to Defendant's Motion for Summary Judgment, Hernandez abandoned his claims of race and national origin discrimination, maintaining only his claims of retaliation. Pl.'s Resp. 22.[1]

## II. DISCUSSION

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to inter-

---

1. Because Hernandez' only surviving claim is for unlawful retaliation under Title VII, the Court considers only that claim in this Order.

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Defendant's Motion to Strike

Defendant filed a "Motion to Strike Plaintiff's Summary Judgment Evidence." The Motion contains dozens of objections to Plaintiff's evidence. In this Order, the Court only references two pieces of the contested evidence. Accordingly, the Court will only rule on these two objections.

▬ The first objection is to paragraph twenty in Hernandez' deposition testimony wherein he states that Lujan asked him to assist Stout with her harassment complaint. Hernandez testified that "Kathia Stout accused Supervisor Jim Thomas and Supervisor Ralph Chavez of engaging in sexual harassment/sexual discrimination against her. Manager Richard Lujan brought me to act as Kathia Stout's Union Representantive, but he subsequently failed/refused to provide me a copy of the investigative report...." Decl. of Jaime Hernandez ¶ 20. Defendant objects to the admission of this evidence as irrelevant and as hearsay.

According to Federal Rule of Evidence 801, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence

to prove the truth of the matter asserted." FED.R.EVID. 801. A witness may only testify to matters within his personal knowledge. FED.R.EVID. 602. In addition, "[a]ll relevant evidence is admissible." FED. R.EVID. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401.

In this testimony, there is no out of court statement at issue; rather, Hernandez is testifying to facts within his personal knowledge. He explains how he came to be involved in Stout's harassment claim and Lujan's alleged failure to provide him with copies of the investigative report. As to relevance, the statement is relevant because it tends to show Hernandez' participation in a protected activity and because it tends to show Lujan's knowledge of Hernandez' involvement in that activity, both facts of consequence to a determination of this action. *See* FED.R.EVID. 402. Accordingly, Defendant's Motion to Strike ¶ 20 of Hernandez' Declaration is **OVER-RULED.**

▬ Defendant's second objection is to the testimony of Hernandez' colleague, Francisco Chavez, Jr. Defendant argues that the paragraph is a conclusory statement and that Chavez fails to establish personal knowledge for these allegations. Chavez testified that:

> Mr. Hernandez was terminated for alleged 'insubordination.' I am aware of others who have failed to follow instructions and who were insubordinate but were not fired or even disciplined for it. These employees include supervisors Ralph Chavez, George Hernandez, Rosemary Alvarado, Larry Barragan, Richard Lujan, Edmundo Luna, Jim Thomas, James Florence, and Danny Ramirez. Employees also include Har-

ry Lee, Thomas Gonzales, and Orlando Griego.

Decl. of Francisco Chavez, Jr. ¶ 15.

Chavez also testified that he has worked at the Postal Service in El Paso since 1986 and served as shop steward for the American Postal Workers Union from 1988 to 2005. He explained that he was union president from February 2003 to February 2005. *Id.* ¶ 2. As a former union president and shop steward for many years, Chavez would be familiar with matters of union member discipline. Thus, he has provided a basis, albeit indirectly, for his personal knowledge of this information. In addition, Chavez has not made a general statement that unnamed employees who were insubordinate were not disciplined. Chavez has provided specific names of these individuals. The Court finds that the evidence is not without a basis for personal knowledge and not conclusory. Defendant's objection is **OVERRULED.**

As to all other objections, because the Court has not considered the underlying evidence in this Order, they are **DENIED** as moot.

## C. Retaliation

■ Title VII prohibits retaliation against employees who engage in protected conduct. *Fabela v. Socorro Ind. School Dist.*, 329 F.3d 409, 414 (5th Cir.2003). In this case, as in most Title VII cases, Plaintiff relies on circumstantial evidence to establish his claim. *See id.* Accordingly, the Court employs the *McDonnell Douglas* three-step, burden-shifting framework to analyze the Motion for Summary Judgment. *See Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 330 (5th Cir.2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Under this framework, the plaintiff must first establish a prima facie case by presenting evidence that: (1) he engaged in protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) the adverse employment action was taken in response to his protected conduct. *Hockman,* 407 F.3d at 330. If the plaintiff establishes the prima facie case, the burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* Once such a reason is given, the plaintiff must present evidence showing that the proffered rationale is pretextual and that "engaging in the protected activity was the but-for cause of the adverse employment action." *Id.*

### 1. Plaintiff's prima facie case

The first two elements of the prima facie case are not in dispute in this matter. Defendant challenges the third element, that the adverse employment action was taken in response to protected conduct. Defendant argues that Hernandez cannot establish the prima facie case because he cannot demonstrate a temporal proximity between involvement in the protected EEO activity and the termination. Def.'s Reply 4. Defendant also argues that Flores, the final decisionmaker, was not even aware of the protected EEO activity and that Hernandez was terminated for insubordination. *Id.* at 5.

Plaintiff argues that there was close temporal proximity between his participation in a protected activity and the adverse action. Pl.'s Resp. 17. He states that Flores was aware of his involvement in the protected activity and that the Defendant departed from normal procedure in Plaintiff's termination. *Id.* at 16, 18–19. Finally, Plaintiff argues that other individuals who were deemed by management to be insubordinate were not terminated like him. *Id.* at 19.

■ Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a

charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e–3(a); *Green v. Administrators of Tulane Educational Fund,* 284 F.3d 642, 657 (5th Cir.2002). Close temporal proximity is sufficient to demonstrate a causal connection between a plaintiff's involvement in a protected activity and the adverse employment action. *Jones v. Robinson Property Group, L.P.,* 427 F.3d 987, 995 (5th Cir.2005) (citing *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation")). Courts also look to the plaintiff's past disciplinary record in determining causation. *Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 508 (5th Cir.1994).

■ At the prima facie stage, "the standard for satisfying the causation element is much less stringent than a but for causation standard." *Ackel v. National Communications, Inc.* 339 F.3d 376, 385 (5th Cir.2003) (internal citations and quotations omitted). Still, the plaintiff must produce some evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation. *Id.* It is well established that, "in determining whether an adverse employment action was taken as a result of retaliation, the focus is on the final decisionmaker." *Id.* (quoting *Gee v. Principi,* 289 F.3d 342, 346 (5th Cir.2002)).

■ Hernandez has met his burden of establishing the prima facie case. Hernandez has presented evidence that he engaged in "protected activity" when he assisted Stout in investigating and bringing her claim of sexual harassment against two managers. *See* 42 U.S.C. § 2000e–3(a);

*Green,* 284 F.3d at 657. Hernandez has presented evidence that he was terminated only two months after his initial involvement in Stout's claim, and a few weeks from the date of his repeated inquiries into the status of Stout's claim with human resources officials. In fact, the termination took place only two days after a supervisor hand delivered Hernandez a letter from human resources regarding the harassment claim. The less than sixty days that elapsed from Hernandez' involvement in the protected activity to his termination is sufficient for Hernandez to demonstrate the requisite causal connection in his prima facie case. *See Jones,* 427 F.3d at 995 (holding that the less than sixty days elapsed between participation in a protected activity and the adverse action is sufficient to demonstrate a causal connection for the prima facie case); *see also Evans v. Houston,* 246 F.3d 344, 354 (5th Cir.2001) (holding that a four month period is sufficient to demonstrate a causal nexus in the prima facie case).

In addition, Hernandez has presented evidence that management, including Lujan and Flores, who were final decisionmakers in the termination, were aware of his involvement in the harassment claim. Hernandez presented evidence that it was Lujan who requested that Hernandez assist Stout with her claim. And Flores himself stated that he was aware of Hernandez' involvement in two sexual harassment claims. Though Defendant attempts to paint Flores' responses as unclear on this issue of Flores' knowledge of the claims and Hernandez' involvement therein, it is clear to this Court, for the purposes of summary judgment, that Flores knew of Hernandez' involvement in protected activity.[2]

■ Defendant states that the Postal Service had previously disciplined Hernan-

---

2. Defendant challenges the meaning of Flores' deposition testimony, claiming that it is ambiguous on the issue of his knowledge of

Hernandez' involvement in Stout's claim. The Court disagrees. Counsel's questioning and the witness' responses are not at their

dez, suspending him for seven days but later reducing the suspension to a letter of warning. Def.'s Proposed Stipulated Facts ¶ 9. Defendant's summary of this portion of the deposition is incomplete. Upon closer review of Hernandez' testimony, it appears that Hernandez was disciplined for his involvement in an EEO claim involving racial harassment. According to this testimony, it also appears that Hernandez filed a grievance regarding the discipline he received for his involvement in that claim, prevailed upon that grievance, and also settled the underlying EEO claim.

Under facts such as these, Hernandez' past disciplinary record does not weigh against him in his demonstration of causation. Defendant has not provided a large enough excerpt of the deposition testimony for this Court to fully understand the nature of the earlier disciplinary action; however, Defendant did provide enough of the testimony for this Court to question whether the testimony even casts Hernandez' record in a bad light. Hernandez was eventually paid for the time he had been suspended from work because he prevailed upon the grievance. In the end, the actual

discipline imposed was minor as he only received a letter of warning.

As explained more fully below, Hernandez has also presented evidence that other employees, who refused to comply with direct orders, were not treated the same way that Hernandez was. This additional evidence fortifies Hernandez' already sufficient prima facie case. Therefore, the Court finds that Hernandez has stated a prima facie case of retaliation.

### 2. Defendant's non-retaliatory reason for termination

 Once the plaintiff sets forth the prima facie case, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir.1999). Defendant's explains that he legitimately terminated Hernandez because he was insubordinate when he refused to operate the DBCS machine after being ordered to do so. Def.'s Mot. for Summ. J. 13. A subordinate's failure to follow a supervisor's direct order is a legitimate non-retaliatory reason for discharge. *Id.* at 167–68.[3] Accordingly, Defendant

most eloquent in this section of the deposition colloquy; however, it is clear enough that Flores was aware of Hernandez' involvement. Plaintiff's counsel asked Flores "And, of course, you are aware that Mr. Hernandez did bring at least two sexual harassment complaints against your supervisors during this time frame; would that be correct, sir? Are you aware of that?" Flores Dep. 35:9–13, June 8, 2006. Flores responded "Yes." *Id.* at 35:14. Also, Flores later responded "Several supervisors brought complaints about Mr. Hernandez, not just people *he brought allegations of sexual misconduct* or sexual—[sic]." *Id.* at 36:12–14 (emphasis added). Given this testimony, it is disingenuous for Defendant to argue that management was ignorant of this union steward's involvement in this protected activity.

**3.** Defendant argues that Hernandez is collaterally estopped from arguing that he was not

insubordinate based upon the arbitrator's determination of December 21, 2004. Def.'s Mot. for Summ. J. 3. Plaintiff responds, citing the Supreme Court case of *Alexander v.Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), for the proposition that, under very similar facts, arbitration under a collective bargaining agreement between the postal workers union and the U.S. Postal Service should not have a preclusive effect in Title VII cases in federal court. Pl.'s Resp. 2–3. Plaintiff also argues that collateral estoppel should not apply as the arbitration process requires a different burden of proof than Title VII actions. *Id.* at 6–7. Finally, Plaintiff argues that the special circumstances in this case would make the application of collateral estoppel particularly unfair. *Id.* at 8.

The Court need not reach the issue of whether collateral estoppel applies. Even assuming that Hernandez was insubordinate, the Court

has met his burden under the *McDonnell–Douglas* burden shifting analysis.

### 3. Pretext

■■■ As Defendant has carried his burden in stating a legitimate non-retaliatory reason for the employment action, the burden falls to Hernandez to establish that Defendant's permissible reason is actually a pretext for retaliation. *See Septimus v. Univ. of Houston,* 399 F.3d 601, 607 (5th Cir.2005).

Defendant argues that Hernandez cannot demonstrate pretext as Hernandez was undisputably terminated for insubordination. Def.'s Reply 7–8. He argues that Hernandez' evidence of other insubordinate employees who were not similarly terminated is conclusory and insufficient. *Id.* at 9–10.

■■■ Plaintiff states that he has presented sufficient evidence to demonstrate pretext. He points to the close temporal connection between his participation in the protected EEO activity and his termination, the fact that management did not follow usual procedures in his termination, the fact that other employees who did not follow the orders of their superiors were not terminated, among other evidence. Pl.'s Resp. 17–21.

Plaintiff has met his burden to survive summary judgment. As the Court has already discussed, Hernandez has shown that he was terminated soon after his involvement in Stout's sexual harassment claim. He has shown that the final decisionmakers in his termination, Lujan and Flores, were aware of this involvement. He has also presented evidence that he was involved in other protected activity as the union steward, including informing the Postmaster General John Potter of allegations of significant instances of racial discrimination at the El Paso facility six months prior to his being accused of insubordination. This temporal proximity between engaging in the protected activity and termination supports the "but for" causal connection necessary for Hernandez to maintain his retaliation claim. *See Jones,* 427 F.3d at 995; *Evans,* 246 F.3d at 354. However, the Court does not rest its decision on these facts alone.

Hernandez has also presented evidence which calls into question the degree of insubordination that he engaged in on the evening of March 30, 2004. As Hernandez claims, there may well have been safety issues involved in his operation of the DBCS alone, without his partner. He also raises questions of fact as to what exactly transpired before, during and after his refusal to follow the supervisors' direct orders. This evidence further buttresses his claim of pretext and that his engagement in protected activity was the actual cause of his termination.

■■■ In further support of this causality, Hernandez presents evidence that management did not follow the usual procedures in his termination. Whether an employer follows its usual procedures in terminating an employee is probative on the issue of retaliation. *Nowlin,* 33 F.3d at 508. Under Postal Service regulations, an employee's direct supervisor proposes termination and the concurring official is usually the supervisor of that supervisor. In this case, Hernandez' supervisor Thomas did not propose termination. Rather Lujan, Manager of Distribution Operations, and Thomas' supervisor, was the individual proposing termination, and Lujan's supervisor, Plant Manager Flores, was the concurring official. Though this evidence by itself would not be highly pro-

finds that Hernandez has presented sufficient evidence to demonstrate pretext and that his

engagement in the protected activity was the "but for" cause of his termination.

bative on the issue of causation, when considered with the other evidence presented in this case, it does cast additional suspicion on Defendant's explanation for the termination.

 Hernandez goes on to show that other employees, who failed to follow the direct orders of their superiors, were not terminated. A plaintiff can demonstrate unlawful retaliation by showing that similarly situated employees were treated differently from him *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir.2005). To raise an inference of discrimination, the plaintiff may compare his treatment to that of similarly situated individuals. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995). Thus, to establish disparate treatment, Hernandez must show that the Postal Service gave preferential treatment to another employee under "nearly identical" circumstances. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir.2001).

Hernandez' colleague, Francisco Chavez, a shop steward and former union president, has named at least twelve other employees, who failed to follow instructions in the past, yet, were not disciplined for their insubordination, let alone terminated for it. In addition, unchallenged testimony from another colleague, Dan Hvizdak, corroborates Chavez' testimony and provides more details as to the circumstances surrounding the acts of insubordination by Hernandez' colleagues, Lee, Gonzales, and Griego. Though this evidence does not clearly establish that these employees are similarly situated, Hernandez presents more than mere conclusory statements. Viewing the evidence in the light most favorable to Hernandez, as the Court must when ruling on motions for summary judgment, the evidence creates issues of fact as to the presence of disparate treatment.

The Court finds that Hernandez has marshaled sufficient evidence on the issue of causation in this case to survive summary judgment. Whether Defendant terminated Hernandez in retaliation for his involvement in Stout's sexual harassment claim, as well as in other protected activity, is a question of fact to be answered by a jury.

## III. CONCLUSION

For the reasons set forth above Defendant's Motion to Strike (Doc. No. 30) is **DENIED** in part and Defendant's Motion for Summary Judgment (Doc. No. 47) is **DENIED.**

**SO ORDERED.**