United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 9, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-50362
_____

MIKE ADAMS,

Plaintiff - Appellee Cross Appellant,

versus

GROESBECK INDEPENDENT SCHOOL DISTRICT; ET AL.,

Defendants,

GROESBECK INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellant Cross Appellee

Appeals from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and SMITH and STEWART,* Circuit
Judges.

EDITH H. JONES, Chief Judge:

Groesbeck Independent School District ("Groesbeck")
appeals the district court's denial of its motion for judgment as
a matter of law after a jury verdict in favor of Mike Adams, a
former girls' athletic coach, on his Title VII retaliation claim.
Groesbeck argues that Adams failed to establish retaliation as a
matter of law because there was no "available" position for which
he applied. Because no reasonable jury could have found that there

_____

    * Judge Stewart concurs in the judgment only.

was an available position, we REVERSE and RENDER judgment in favor of Groesbeck.

## I. BACKGROUND

Mike Adams began working for Groesbeck Independent School District in 1971 as a teacher and coach. In 1998, he and his wife Allison Adams, also a teacher and coach, worked at the Groesbeck middle school. Groesbeck requires that its coaches also teach.

Groesbeck did not renew Adams's contract for the 2000-01 school year because of complaints regarding his coaching abilities. Adams's position at the middle school was not filled, and the nonrenewal of his contract reduced the girls sports coaching staff from three to two. The remaining coaches for the 2000-01 school year were Allison Adams and Allen Grimes.

Before the start of the 2000-01 school year, Adams filed his first suit against Groesbeck in June 1999, alleging violations of Title VII. The parties settled this suit in January 2001. The terms of the settlement did not prohibit Adams from reapplying for employment with Groesbeck.

The 1999-2000 school year began with the same two coaches for girls sports as the previous year, Allison Adams and Grimes. This continued until Groesbeck placed Grimes on administrative leave in October 2001. Groesbeck determined that a long-term substitute teacher would be needed and selected Michael Milnes, who had previously applied to work as a substitute teacher, to cover

2

Grimes's teaching responsibilities. After Adams learned of Grimes's status in October 2001, he submitted an application for the position of girls middle school coach, even though no coaching position had been advertised. Adams did not apply for a substitute teaching position. While Milnes had been covering Grimes's teaching duties, Milnes had no coaching responsibilities. Allison Adams became the only girls coach. Groesbeck convinced several high school girls coaches to help Allison Adams with the middle school girls coaching responsibilities.

In December 2001, Grimes had resigned and Groesbeck officials met to decide how to address Grimes's teaching and coaching responsibilities for the Spring 2002 semester. The middle school principal, Karon Golden, decided that she would delay hiring a new teacher/coach to replace Grimes until the 2002-03 school year because she wanted extra time to analyze the middle school's needs for the next year. Principal Golden believed that a new teacher was not needed because several of Grimes's classes either had no or very few students assigned. Instead of hiring a new teacher, Principal Golden reassigned the students in Grimes's classes to other teachers. Milnes became an instructional aide to the teachers who took on the additional students. The high school coaches continued assisting Allison Adams with her coaching responsibilities. Principal Golden testified that she made these decisions without knowing that Adams had submitted an application. Groesbeck's superintendent approved Golden's suggestion. Groesbeck

3

did not post a job announcement, review submitted applications, or interview anyone for a teacher/coach position in the Spring 2002 semester.

Allison Adams complained to Athletic Director Richie Coutrer in February 2002 about Groesbeck's handling of Grimes's coaching responsibilities. She believed Groesbeck should have hired another coach and stated that her husband, Mike Adams, had applied. Allison Adams testified that Coutrer told her that no qualified applicants had applied and that he could not hire Mike Adams because of his previous lawsuit. Coutrer disputed this testimony, however; he recalled telling Allison Adams that the school could not hire Mike Adams because there was no job opening, and he denied stating that Adams could not be hired because of his previous lawsuit.

In April 2003, Adams sued Groesbeck under Title VII for not rehiring him, alleging that the school district had retaliated against him for filing his previous suit. The jury returned a verdict in his favor, and the court entered judgment. Because the district court denied Groesbeck's and Adams's post-judgment motions, both parties have appealed.[1]

## II. DISCUSSION

---

[1] Groesbeck sought judgment as a matter of law or a new trial on a number of grounds, while Adams moved for an additur and injunctive relief. We need only address the issue that is dispositive for Groesbeck.

4

Groesbeck argues that Adams did not apply for an available position, because the middle school had decided not to fill Grimes's spot in the spring semester. Consequently, Adams could not prove that he endured an adverse employment action by Groesbeck.

The district court's denial of Groesbeck's motion for judgment as a matter of law is reviewed de novo, applying the same standards as the district court. Int'l Ins. Co. v. RSR Corp., 426 F.3d 281, 296 (5th Cir. 2005). The court must "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party," id., and the jury verdict must be upheld unless "there is no legally sufficient evidentiary basis for a reasonable jury" to have found for the nonmovant. FED. R. CIV. P. 50(a)(1); RSR Corp., 426 F.3d at 296-97.

To establish a Title VII retaliation case, Adams was required to prove that he engaged in protected activity; he suffered from an adverse employment action; and there was a causal connection between the activity and the adverse employment decision. Haynes v. Pennzoil Co., 207 F.3d 296, 299 (5th Cir. 2000). Post-trial, the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), framework becomes moot, and the question is whether legally sufficient evidence supported the jury's finding in Adams's favor. Bryant v. Compass Group USA Inc., 413 F.3d 471, 476 (5th Cir. 2005), cert. denied, 126 S. Ct. 1027 (2006).

5

Adams's case was built on the contention that Groesbeck failed to hire him as a coach in the Spring 2002 Semester in retaliation for his previous successful Title VII suit against the district. His case breaks down if Groesbeck did not have an opening for a full-time middle school coach at that time. An employer does not discriminate or retaliate illegally if it has no job opening. See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 325 (5th Cir. 2002) ("The nonexistence of an available position is a legitimate reason not to promote.") (citing Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 358 n.44, 97 S. Ct 1843, 1866 n.44 (1977)); Haynes, 207 F.3d at 300-01 (plaintiff failed to establish a prima facie case of discrimination because the position he was qualified for was unavailable).

Adams asserts that the jury resolved disputed evidence and found that Groesbeck had an available position for a middle school teacher/coach commencing in October 2001 for which he applied. A careful review of the record shows differently. After Grimes was placed on administrative leave, the district did not post a job announcement, nor did its employees review resumes or interview any candidates to fill his position. Instead, as has been detailed above, Principal Golden and Superintendent Rosas determined that Grimes's teaching duties could be covered by a long-term substitute and selected an appropriate candidate from the substitute list. Adams did not apply to be a substitute teacher.

6

Instead, he submitted an unsolicited application for the full-time position of girls middle school coach.[2]

Adams relies upon his wife's testimony to establish that there was an available position. When Allison complained to Athletic Director Coutrer about the need for another coach, Coutrer allegedly responded that there were no qualified applicants to help her coach the girls teams and that he could not hire her husband because of the previous lawsuit. While Coutrer's statement is the linchpin of the retaliatory motive evidence, the evidence also demonstrated beyond question that Coutrer was not responsible within the district for deciding whether there was an available position at the middle school in the spring semester. See, e.g., Keelan v. Majesco Software, Inc., 407 F.3d 332, 346 (5th Cir. 2005) ("Keelan does not allege and presents no evidence here that the Majesco personnel who made the remarks were involved in or influenced the decision to fire him or that those remarks were made in connection with his discharge."); see also Scales v. Slater, 181 F.3d 703, 712 (5th Cir. 1999). Moreover, Allison Adams's desire that her husband be hired to assist with her coaching duties does not establish the existence of an available position.

---

[2] The jury's damage award strongly suggests that the jury was erroneously instructed on this point, leading to its confused conclusion that Adams applied for an available position. The jury awarded Adams $5,400 in lost wages, roughly the amount he would have earned as a long-term substitute teacher. The jury apparently believed that the wages paid to Milnes, the long-term substitute teacher, should have been paid to Adams, even though Adams did not apply for this position.

Adams points to the testimony of Superintendent Glynis Rosas, who admitted that Grimes's position became vacant, and he contends that the reduction of the middle school girls coaching staff from two to one created a vacant position. This misses the distinction between a "vacant" position and an "available" position. Although it was vacant, Grimes's position was not available because Groesbeck officials, for logical reasons having nothing to do with Adams, chose not to hire a new teacher/coach to fill the vacant position during the remainder of the 2001-02 school year. See Weber v. Am. Express Co., 994 F.2d 513, 516 (8th Cir. 1993) (plaintiff failed to establish a prima facie case of discrimination where the employer did not fill the position or seek applicants); see also Peltier v. United States, 388 F.3d 984, 989-90 (6th Cir. 2004). Consequently, the jury's finding that there was an available position is not supported by the evidence. See Perez, 307 F.3d at 324-25 (position not available when employer chose not to fund it).

## III.  CONCLUSION

The district court erred in not granting Groesbeck's motion for judgment as a matter of law because Adams failed to establish a prima facie case of retaliation. Adams cannot show that he suffered an adverse employment action because a reasonable jury could not conclude there was an available position. We need not consider Groesbeck's appeal of the district court's denial of

8

its motion for a new trial or the issues raised in Adams's cross appeal.  Accordingly, we REVERSE and RENDER judgment in favor of Groesbeck.

**REVERSED.**