United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-30847

CHARLIE J CAMPBELL

Plaintiff - Appellee

v.

GORDON R ENGLAND, Secretary, United States Department of the Navy

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2:02-CV-3254

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Gordon England, the Secretary of the Navy, appeals the district court's denial of his post-verdict motion for judgment as a matter of law. The Secretary contends that plaintiff-appellee Charlie Campbell presented insufficient evidence to support the jury's verdict for Campbell on his Title VII retaliation claim. Specifically, the Secretary argues that

---

[*] Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

1

the evidence fails to establish a causal connection between Campbell's 1997 filing of an Equal Employment Opportunity complaint and the Navy's 2001 decision to require an engineering degree for a position that Campbell sought, which excluded Campbell from consideration. We agree, and REVERSE and RENDER judgment for the Secretary of the Navy.

## I.  Factual and Procedural Background

Plaintiff-appellee Charlie Campbell, a civilian engineering technician for the Navy Supervisor of Shipbuilding in Pascagoula, Mississippi, applied in 1997 for a promotion to become manager of the Quality Assurance Department. Although the job had only been available to engineers in prior years, the Navy decided to advertise it as available to both engineers and engineering technicians. But despite being rated one of five "best qualified" applicants, Campbell was ultimately not selected, and an engineer, Ronald Glenn, was selected instead. Campbell, an African-American, filed an Equal Employment Opportunity ("EEO") complaint that year alleging that he was not selected because of his race.

Around 2000, the Navy merged the Quality Assurance Department with the Production Controller Department, which was also supervised by an engineer. Glenn remained as manager of the surviving department.[1] Towards the end of the year, Commander

---

[1] After the departments were combined in the merger, the

Mary Logsdon came to the Pascagoula facility in a supervisory role, and Campbell told her about his prior EEO complaint shortly after she began working there.

Approximately five or six months later, around February 2001, Glenn told Logsdon that he was retiring. Logsdon knew that both engineers and engineering technicians had been able to apply for the position in 1997, but she decided to limit the availability of the position to engineers after checking with a Navy lawyer and supervisors to make sure that the reclassification was allowed. One effect of reclassifying the job was that Campbell could not apply. The job was advertised nationally and was ultimately filled by Brian Johnston, an engineer who worked in Campbell's department.

Believing that Logsdon reclassified the job in retaliation for his 1997 EEO complaint, Campbell sued the Secretary of the Navy in October 2002 alleging, inter alia, retaliatory discrimination in violation of Title VII, 42 U.S.C. § 2000e-3(a). After a three-day trial, the jury returned a verdict for Campbell on this claim and awarded him $500,000 in compensatory damages.[2]

surviving department was apparently named the Waterfront Operations Department, but the name was subsequently changed back to Quality Assurance Department.

[2] The jury found against Campbell on his Title VII claim that the Navy discriminated against him based on his race when it

The district court granted the Secretary's motion to alter or amend judgment, remitting the damages to $96,000, but denied the Secretary's motion for judgment as a matter of law. The Secretary timely appealed.

## II.   DISCUSSION

The Secretary contends that the district court erred in denying his motion for judgment as a matter of law because Campbell failed to offer any evidence showing a causal connection between his 1997 EEO complaint and the 2001 reclassification of the position he sought. The district court denied the motion because it believed that a fact-finder could infer retaliatory intent from Logsdon's knowledge of the 1997 job application and EEO complaint, Logsdon's understanding that the effect of the reclassification would be to exclude Campbell from applying for the job again, and the substantial overlap between the current position and the one for which Campbell was deemed among the "best qualified" in 1997.

We review de novo the district court's denial of the Secretary's motion for judgment as a matter of law, applying the same standards as the district court. Adams v. Groesbeck Indep. Sch. Dist., 475 F.3d 688, 690 (5th Cir. 2007). In this inquiry, we "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving

failed to promote him to manager in 1997.

4

party."  Id. (internal quotation marks and citation omitted).
Moreover, the jury verdict is afforded great deference and must
be upheld unless "a reasonable jury would not have a legally
sufficient evidentiary basis to find for the" nonmovant.  FED. R.
CIV. P. 50(a)(1); Adams, 475 F.3d at 690.

"Title VII prohibits retaliation against employees who
engage in protected conduct, such as the filing of a charge of"
race discrimination.  Fabela v. Socorro Indep. Sch. Dist., 329
F.3d 409, 414 (5th Cir. 2003); see also 42 U.S.C. § 2000e-3(a).
To establish a retaliation claim under Title VII, a plaintiff
must demonstrate (1) that he engaged in a protected activity, (2)
that an adverse employment action occurred, and (3) that a causal
link exists between the protected activity and the adverse
employment action.[3]  Fabela, 329 F.3d at 414.  Only the third

[3] When analyzing Title VII retaliation cases that have not
reached a jury, courts apply the burden-shifting framework
detailed in McDonnell Douglas Corp. v. Green, 411 U.S. 792
(1973).  Once the case has been fully tried, this framework
becomes unimportant, and a court "need not . . . parse the
evidence into discrete segments corresponding to a prima facie
case, an articulation of a legitimate, [nonretaliatory] reason
for the employer's decision, and a showing of pretext."
Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 402
(5th Cir. 2000).  The question instead becomes "whether the

5

element is at issue in this appeal.

Causation can be established through direct or circumstantial evidence.  Id. at 414-15; Septimus v. Univ. of Houston, 399 F.3d 601, 607-08 (5th Cir. 2005).  If direct evidence is used, the plaintiff need only establish that improper retaliation was a motivating factor in the adverse employment action.  Fabela, 329 F.3d at 415.  If circumstantial evidence is used, this circuit has required that the plaintiff prove to a jury "that the adverse employment action taken against the plaintiff would not have occurred 'but for' [his] protected conduct."[4]  Septimus, 399 F.3d at 608.  The plaintiff may do so

_____

record contains sufficient evidence to support the jury's ultimate findings."  Bryant v. Compass Group USA Inc., 413 F.3d 471, 476 (5th Cir. 2005) (internal quotation marks and citation omitted).

[4] It is now established that in Title VII discrimination cases, a plaintiff need only meet the "motivating factor" standard even if the plaintiff is adducing only circumstantial evidence.  See Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). This circuit has not yet considered whether the holdings of these cases should be extended to Title VII retaliation cases.  See Septimus, 399 F.3d at 607 n.7.  However, we do not address this issue here, as neither party has raised it, and, in any event,

6

by proving that the employer's purported nonretaliatory reasons for the employment action are pretextual and that retaliation was the real reason. See id. at 607; Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001). However, "[t]he plaintiff must rebut each [nonretaliatory] reason articulated by the employer." Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003).

The record does not reflect that Campbell presented any direct evidence of retaliation, which is defined as evidence that "if believed, proves the fact [in question] without inference or presumption." Fabela, 329 F.3d at 415 (internal quotation marks and citation omitted). The question, then, construing all evidence in the light most favorable to Campbell, is whether sufficient evidence existed for a reasonable jury to find that the position Campbell sought would not have been reclassified but for his earlier EEO complaint or whether sufficient evidence of pretext existed to allow a reasonable jury to draw that

---

this case was tried as a pretext case and the jury was instructed as to "but for" causation on the retaliation claim. See id. at 607-08 (holding that the "but for" causation standard applied in a Title VII retaliation case without considering the effect of Desert Palace and Rachid because the case was litigated and tried as a pretext case). Although the jury was instructed as to the "motivating factor" standard, that instruction related only to Campbell's unsuccessful race discrimination claim.

7

inference.

Logsdon, the undisputed decisionmaker who reclassified the position, gave three related nonretaliatory reasons for limiting the job to engineers. She testified that after the Quality Assurance Department and Production Controller Department merged, the manager responsible for the surviving department had expanded job duties placing a greater emphasis on the technical aspects of the job. Logsdon, who is a degreed engineer herself, also testified that other areas of her job needed her focus and that she was less able to give the newly combined department as much oversight as it needed, so she felt that she needed a degreed engineer in the position. Finally, she testified that the supervising aspects of the manager's job require assigning work to engineers and checking their work and that she did not think that an engineering technician should be checking the work of a degreed engineer.

The crux of Campbell's pretext argument in the district court was that he was rated among the five "best qualified" candidates for the manager position in 1997 and that the job that opened in 2001 was essentially the same job, meaning that Logsdon's claim of needing someone with an engineering degree to handle the expanded job duties in 2001 was untrue. However, in an analogous retaliation case in which an employee challenged her employer's requirement of a Ph.D. for a certain job, supported by witnesses establishing that most of the job duties were ones that

8

the plaintiff employee had been successfully performing for years, this court emphatically stated that "anti-discrimination laws are not vehicles for judicial second-guessing of business decisions." Mato, 267 F.3d at 452 (internal quotation marks and citation omitted). The court held that the employee and her witnesses had "done nothing more than register their disagreement with [her boss's] business plans," which was insufficient to show pretext. Id. Similarly, this court has deferred to an employer's chosen set of job qualifications unless "no reasonable employer would have made the same decision." Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001) (quoting Deines v. Texas Dep't of Protective & Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999)). Accepting as we must Campbell's testimony that an engineering degree is unnecessary to do the work of a manager, the evidence remains insufficient to call into doubt Logsdon's belief that a degreed engineer was preferable or to show that no reasonable employer would have preferred an engineering degree.

Moreover, the evidence presented by Campbell at trial fails to contradict Logsdon's explanation as to why she preferred an engineer for the role. Campbell's evidence mainly shows that a non-engineer would be capable of doing the management job and that he in particular is very capable of performing the job duties. For example, Campbell testified that Glenn, who got the manager job in 1997, and Brian Johnston, who got the job in 2001, were doing the same sorts of things that engineering technicians

9

did and that they were not doing engineering work.  Further, a coworker of Campbell's testified that the managers did not perform true engineering work like making calculations or designs, but rather placed people on jobs and set priorities for the department.  Additionally, the Navy's 1997 job description of the position for which Campbell was rated among the five "best qualified" listed a variety of required technical skills and Logsdon testified that the 2001 job description sought similar skills, leading to the inference that Campbell was qualified to perform the type of skills required for the job that opened in 2001.

However, Logsdon testified that she sought an engineer in 2001 not because the basic skills needed for the management job were different from those required for the 1997 job or those possessed by engineering technicians, but rather because the departmental merger placed a greater emphasis on the technical aspects of the job.  In fact, Logsdon pointed to percentages that were typed next to the different aspects of the 1997 job description and said that they changed for the 2001 job.  Mere disbelief of a witness's testimony, without supporting evidence, is insufficient to carry a plaintiff's burden,  Mato, 267 F.3d at 451-52, and none of Campbell's evidence calls into doubt Logsdon's belief that the merger brought more of a technical focus to the management job, even if the fundamental skills needed for the job were unchanged.  Nor does any evidence

10

challenge Logsdon's testimony that she had less time available to oversee the department herself and that she preferred relying on a degreed engineer rather than a technician to run the department. Campbell may have proved that an engineering degree was unnecessary and that he could have performed the job well himself, but he failed to identify any evidence that shows that Logsdon's preference for a degreed engineer was phony and merely a pretext for retaliation against Campbell.

Campbell also argued to the district court that Logsdon began looking into reclassifying the position only five or six months after she found out about his 1997 EEO complaint, establishing temporal proximity between the protected activity and the reclassification from which causation can be inferred. But while close timing between an employee's protected activity and an adverse employment action can establish a prima facie case of retaliation, close timing alone is insufficient to establish pretext. See Strong v. Univ. HealthCare Sys., 482 F.3d 802, 808 (5th Cir. 2007); Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). Additionally, it is not clear that a five- or six-month time lapse would be sufficient to draw such an inference, as this circuit has only allowed lapses of up to four months to go to the jury as evidence of pretext, Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001), and the Supreme Court has cited with approval cases holding that three- and four-month spans were too long to show pretext, Clark County Sch. Dist. v.

11

<u>Breeden</u>, 532 U.S. 268, 273 (2001).  And in this case it is undisputed that Logsdon's thoughts of reclassifying the job began after the prior job occupant decided to retire, which Logsdon only found out about five or six months after Campbell told her of his 1997 complaint, making any inference of pretext from the timing alone far less reasonable.

Campbell further argued that Logsdon testified that she discussed his EEO complaint with her supervisors in connection with the reclassification decision, leading to the inference that the acts were related.  As the trial transcript shows, however, Logsdon explicitly denied that she did so, stating only that she talked to a lawyer and her supervisors about whether limiting the position to engineers was allowed.

Finally, Campbell argued that Logsdon's decision conflicts with Navy personnel regulations.  At most, though, this indicates that Logsdon incorrectly determined that she was allowed to limit the job to engineers, not that she was motivated by retaliation against Campbell because of his 1997 EEO complaint.  Logsdon testified that she believed that the reclassification was allowed and checked with a Navy lawyer and her supervisors to ensure that it was, and Campbell identifies no evidence to the contrary.

In sum, insufficient evidence existed for a reasonable jury to determine that Logsdon's reasons for reclassifying the management position were pretextual or that but for Campbell's 1997 EEO complaint, the job would have remained open in 2001 to

12

engineering technicians.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's denial of the Secretary's motion for judgment as a matter of law and RENDER judgment in favor of the Secretary of the Navy.