**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 14, 2012

No. 11-10058

Lyle W. Cayce
Clerk

MARTHA ELLERBROOK,

Plaintiff - Appellant

v.

CITY OF LUBBOCK, TEXAS,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:09-CV-144

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Martha Ellerbrook brought a Title VII retaliation lawsuit against the City of Lubbock, alleging that the City failed to hire her in retaliation for her assistance in her husband's discrimination lawsuit against the City. The case went to trial and the jury found that the City had retaliated against Martha and awarded her $243,000 in damages. The district court then granted the City's renewed motion for judgment as a matter of law, conditionally granted the City's motion for a new trial, and entered final judgment for the City. On appeal,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10058

Martha asserts that the district court erred in granting the City's renewed motion for judgment as a matter of law and that the district court abused its discretion in granting the City's motion for a new trial. For the following reasons, we REVERSE the district court's judgment for the City, REVERSE the court's grant of a new trial, REVERSE the court's order denying Martha's motion for attorney's fees and costs, and REMAND the case to the district court with instructions to enter judgment for Martha and to consider an amended motion for attorney's fees and costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From 1989 until 2003, Martha Ellerbrook ("Martha")[1] was an employee of the City of Lubbock (the "City"). Her job titles included industrial wastewater monitoring program coordinator, environmental inspection services coordinator, and managing director of management services. During her fourteen years with the City, Martha gained experience writing grants, preparing budgets, handling customer complaints, and supervising employees. In 2003, the City eliminated Martha's position in a reduction in force.

Martha's husband, Terry Ellerbrook ("Terry"),[2] has worked for the City since 1982. In January 2005, Tom Adams ("Adams"), the City's Deputy Manager, notified Terry that it was the City's intent to terminate his employment in ninety days. Terry filed a grievance with the City, and before the grievance was heard by a hearing officer, the City changed Terry's job title. In June 2005, Terry filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In April 2006, Terry filed a lawsuit against the City. In May 2006, Terry filed a second charge with the EEOC, alleging that the City had retaliated against him.

---

[1] Because this opinion discusses both Terry and Martha Ellerbrook, husband and wife with the same last name, this opinion refers to them by their first names.

[2] Martha and Terry were married in 1993.

2

No. 11-10058

In connection with Terry's EEOC charges and lawsuit, Martha assisted her husband by speaking with the attorneys and with the EEOC, helping to prepare production requests and letters to the EEOC, reviewing documents at City Hall, and attending negotiation meetings. Lee Ann Dumbauld ("Dumbauld"), the City Manager, was aware of Terry's litigation against the City, and she stated that many other City employees knew of Terry's lawsuit. Dumbauld also testified that she was aware of Martha's assistance in Terry's litigation, as she met Martha at a mediation.

On November 27, 2006, while Terry's case was still pending, Martha submitted an application to the City for the position of water programs coordinator. The job posting stated that the water programs coordinator "[a]ssists the Deputy City Manager and performs a variety of highly responsible technical and administrative assignments related to Water Utilities." The job posting set forth several requirements, including "[a]ny combination of education and experience equivalent to completion of a bachelor degree [sic] in Public Administration, Business Administration, Environmental Engineering, Chemistry, Biology, or a related field with an additional three years of progressively responsible experience in management experience, including supervisory and financial responsibility." Other requirements included knowledge of contract administration and budget management; knowledge of environmental laws pertaining to water and wastewater; ability to supervise the work of others; and ability to prepare and administer budgets.

Twenty-four individuals applied for the water programs coordinator position. The Human Resources Department screened the applications for minimum qualifications and referred twenty applications to Adams for further consideration. Adams was responsible for filling the position of water programs coordinator. On December 12, 2006, Adams held a meeting with several department heads to review the applications of the twenty candidates and to

3

No. 11-10058

choose several candidates with the best qualifications for interviews. Adams and the department heads chose four finalists, including Martha.

Given that Terry's litigation was based on Adams's alleged actions and that Martha had applied for a position that Adams was required to fill, Dumbauld and Adams agreed that the City should hire an outside employment consultant to conduct the final interviews for the position. Dumbauld testified that they wanted to avoid the appearance of impropriety, particularly retaliation, if Martha was not selected for the position. Dumbauld instructed Adams to work with Chris Hartung ("Hartung") of Waters Consulting Group, who had interviewed both Adams and Dumbauld for their positions with the City. The consultant's duties were to interview the candidates and make a recommendation to the City regarding the best qualified candidate; the City would still retain final authority over which candidate to hire.

After Hartung was retained, Hartung asked Adams to create a "scoring matrix" to assist in his evaluation of the candidates. Adams testified that he had reviewed the candidates' applications and resumes before he created the scoring matrix. Adams conceded that he could have rigged the scoring matrix to favor one of the candidates. However, Adams stated that he did not prepare the scoring matrix to favor particular candidates, but instead prepared the matrix according to the job description and job duties.

On December 19, 2006, Adams sent Hartung the scoring matrix that he had created. The scoring matrix included weighted categories for education (20%), experience (30%), computer skills (10%), leadership skills (10%), interpersonal skills (10%), and technical skills (10%).[3] With regard to education, the matrix awarded (a) 20 points for a Bachelor's degree, (b) 30 points for a Bachelor's degree in Finance, Accounting, or a related field, (c) 20

---

[3] We acknowledge that these percentages do not add up to 100%.

4

No. 11-10058

points for a Master's degree, and (d) 30 points for a Master's degree in Finance, Business Management, or a related field. Thus, an applicant who had a Bachelor's degree in Chemistry received 20 points total, while an applicant who had a Bachelor's degree in Accounting and a Master's degree in Finance received 100 points total. With regard to experience, the matrix awarded points for years of experience in budget preparation, account management, financial planning and analysis, water and wastewater, and management. For instance, with respect to account management experience, the applicant received 0 points for 0 years of experience; 5 points for 1-3 years of experience; 10 points for 2-5 years of experience; and 15 points for 6 or more years of experience.

On January 23, 2007, Hartung interviewed the three finalists for the water programs coordinator position: Martha, Linda Cuellar ("Cuellar"), and Tammy Vander Kuy ("Vander Kuy").[4] On January 29, 2007, Hartung completed the scoring matrix for each applicant. Vander Kuy ranked the highest of all three applicants, receiving a score of 92.3%; Cuellar ranked second, receiving a score of 73.3%; and Martha ranked third, receiving a score of 63.6%. Hartung sent the results to Adams, and Adams hired Vander Kuy because she scored the highest on the scoring matrix. On February 16, 2007, Martha received a letter from the City explaining that she had not been chosen for the position and that the City had hired a more qualified person.

After filing a charge of discrimination with the EEOC and receiving a right-to-sue letter from the EEOC, Martha timely filed a lawsuit against the City, alleging retaliation under Title VII. 42 U.S.C. § 2000e–3(a). In her complaint, Martha alleged that the City unlawfully retaliated against her—by not hiring her for the position of water programs coordinator—because of her assistance in Terry's lawsuit against the City. On May 14, 2010, the City filed

---

[4] One of the four finalists withdrew his application before the interview.

a motion for summary judgment, arguing that: (1) Martha did not produce any evidence that Hartung, the decision-maker, knew of her assistance in Terry's lawsuit, and thus she failed to establish her prima facie case of retaliation; and (2) Martha failed to offer evidence that the City's articulated, non-retaliatory reason for not hiring Martha—that Vander Kuy was the best qualified applicant for the position—was pretextual.

With regard to the City's first argument, the court found that Martha produced enough evidence to demonstrate that Adams was the decision-maker. Further, because there was evidence that Dumbauld knew of Martha's assistance in Terry's litigation and that Adams and Dumbauld collaborated about how to interview Martha in light of Terry's litigation, the court concluded that "[t]his is more than enough evidence to infer that Adams knew of [Martha's] participation with her husband's suit." Thus, the court found that Martha had established her prima facie case.

With regard to the City's second argument, Martha asserted that the City's reason for not hiring her was pretextual because Adams had designed the scoring matrix to prejudice Martha and benefit the other candidates. The court found that Martha provided evidence that "the scoring matrix emphasized skill sets and qualifications that were different from those listed in the job applications materials." Also, the court found that Martha presented evidence that the scoring matrix was specifically designed to favor Cuellar and Vander Kuy. Further, Martha offered evidence that Adams had reviewed the candidates' applications before creating the scoring matrix, and therefore he could have designed the matrix to prejudice Martha and favor the other candidates. The district court denied the City's motion for summary judgment.

During a jury trial in October 2010, the jury heard testimony from Dumbauld, Adams, Martha, and Terry, among others. At the close of Martha's presentation of the evidence, the City orally moved for judgment as a matter of

No. 11-10058

law under Federal Rule of Civil Procedure 50(a), and the district court denied the motion. At the close of all evidence, the City again moved for judgment as a matter of law, and the court denied the motion. The jury found that the City retaliated against Martha by hiring another person for the water programs coordinator position because Martha had assisted in Terry's protected activities. The jury awarded Martha $243,000 in damages. After the jury verdict, the district court ordered post-verdict motions. On October 28, 2010, the City filed a post-verdict motion for judgment as a matter of law or for a new trial. Martha filed motions for entry of judgment and for an award of attorney's fees.

On December 10, 2010, the district court granted the City's renewed motion for judgment as a matter of law, conditionally granted the City's motion for a new trial, and denied Martha's motions for entry of judgment and for attorney's fees. The court granted the City's renewed motion for judgment as a matter of law on two alternative bases. First, the court analyzed whether Martha established a prima facie case of retaliation. The court found that Martha did not present sufficient evidence at trial of Adams's knowledge of her assistance in Terry's litigation, and thus the court held that she failed to establish a causal connection between her assistance and the City's failure to hire her. The court reasoned that "Adams emphatically denied having any knowledge of [Martha's] assistance, and [Martha] presented no direct evidence of such." The court examined the circumstantial evidence that Martha presented—including Dumbauld's knowledge of Martha's assistance and Dumbauld's collaboration with Adams about hiring an outside consultant—but concluded that this evidence was "less than substantial" and "speculative at best." The court held that Martha's retaliation claim failed as a matter of law.

Second, "out of an abundance of caution," the district court assumed that Martha established her prima facie case and then assessed whether Martha established that the City's reason for not hiring her was a pretext for retaliation.

7

No. 11-10058

The City's articulated, non-retaliatory reason for not hiring Martha was that Vander Kuy was the most qualified candidate based on the results of the scoring matrix. The court noted that Martha attempted to establish pretext at trial by arguing that she was clearly better qualified for the position. The court also noted that Martha argued that Adams's scoring matrix was designed to "preclude[] her from scoring high enough to get" the position.

To determine whether Martha established pretext, the district court proceeded to analyze the results of the scoring matrix. With regard to education, Martha argued at trial that the City relied on a previously unmentioned job requirement—applicants having degrees in a business-related field. The court rejected this argument, stating that this was not a "requirement." Furthermore, the district court rejected Martha's argument that the education category was determinative. The court adopted the City's argument that "even removing the education criterion from the equation, . . . and adding together all the remaining categories of the matrix as Hartung scored them, [Martha] still would have scored the lowest of all the interviewees."

With regard to experience, Martha argued at trial that Adams manipulated this category by giving great weight to experience in budgets, accounting, and finance, and that these areas were "not fairly represented in the . . . job description and posting." However, the district court credited the testimony of City employees who stated that the position was in a transition to become "more focused on budgetary and financial issues." The court found Vander Kuy "to be a credible witness," who testified to "having extensive experience in budget preparation and financial account management." The court stated that "Vander Kuy either outscored or tied [Martha] in every category of the matrix" and that therefore "no jury could have reasonably concluded that [Martha] was clearly more qualified than Vander Kuy" for the position. Thus,

the court found that Martha failed to establish pretext and that her retaliation claim failed as a matter of law.

Next, the court conditionally granted the City's motion for a new trial, reasoning that, based on its above analysis, the verdict as to liability was against the great weight of the evidence. Furthermore, the court concluded that the verdict as to damages was against the great weight of the evidence "in that it [did] not reflect [Martha's] failure to properly mitigate her damages." The district court denied Martha's motion for attorney's fees as moot. Martha timely appealed the district court's order and judgment.

## II. DISCUSSION

### A. The District Court's Grant of Judgment as a Matter of Law

*1. Standard of Review*

"We review a district court's grant of judgment as a matter of law *de novo*, applying the same standard as the district court." *See Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003) (citation omitted). Pursuant to Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). This standard is satisfied when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the [c]ourt believes that reasonable men could not arrive at a contrary verdict." *Laxton*, 333 F.3d at 577 (citations and internal quotation marks omitted).

In making this determination, "[t]he jury's verdict is afforded great deference." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005). In "review[ing] all of the evidence in the record," we "must draw all reasonable inferences in favor of the nonmoving party, and [we] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). Thus, we "must disregard all

evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151 (citation omitted). Further, we give credence to "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (citation and internal quotation marks omitted).

### 2. *Title VII Retaliation Claim*

In this case, Martha asserted a Title VII retaliation claim against the City—that the City failed to hire her for the water programs coordinator position because of her assistance in Terry's protected activities. Because Martha presented only circumstantial evidence to prove her Title VII retaliation claim, the *McDonnell Douglas* burden-shifting framework initially applied to assess her claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Under this framework, a plaintiff must first establish a prima facie claim of unlawful retaliation, which consists of three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took an adverse employment action against that individual; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 690-91 (5th Cir. 2007) (citation omitted). If the plaintiff meets this showing, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision. *See Raggs*, 278 F.3d at 468. If the defendant meets this burden, the plaintiff must then offer sufficient evidence to prove that the defendant's reason is pretextual. *Id.*

However, after trial, the *McDonnell Douglas* framework "becomes moot, and the question is whether legally sufficient evidence supported the jury's finding." *Adams*, 475 F.3d at 691 (citation omitted). In a Title VII retaliation case, "[t]he ultimate determination is whether, 'but for' the protected conduct, the employer would not have engaged in the adverse employment action."

No. 11-10058

*Douglas v. DynMcDermott Petroleum Operation Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (citations omitted); *see Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 (5th Cir. 2000) ("[D]oes the evidence support a finding that 'but for' [plaintiff's] protected activity, he would have gotten the job?").

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]." *Id.* at 148. The Court reasoned that "once the employer's justification has been eliminated, [retaliation] may well be the most likely alternative explanation." *Id.* at 147. However, the Court stated that such a showing would be insufficient to sustain a jury's finding of liability (1) when the record conclusively established some other, legitimate reason for the employer's conduct, or (2) when the "plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no [retaliation] had occurred." *Id.* at 148 (citations omitted). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors[,]" including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148-49.

*3. The District Court Erred in Applying the Standard of Review*

On appeal, Martha asserts that the district court did not apply the correct standard of review in determining whether to grant the City's renewed motion for judgment as a matter of law. She argues that the court considered evidence it was required to disregard, made credibility determinations, and failed to construe the facts and all reasonable inferences from the facts in the light most favorable to Martha. We agree.

11

No. 11-10058

First, the district court erred by considering evidence it was required to disregard.  Under the applicable standard of review, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted).  In its order, the district court assessed whether Martha produced substantial evidence at trial regarding Adams's knowledge about Martha's assistance in Terry's protected activities.  In its analysis, the court stated that "[a]t trial, Adams emphatically denied having any knowledge of [Martha's] assistance."  However, the jury was not required to believe Adams's testimony, as he was not a disinterested witness, and therefore the district court erred in considering his testimony in its analysis.

Second, the district court erred by making credibility determinations. *See Reeves*, 530 U.S. at 150 (stating that "the court . . . may not make credibility determinations").  Several times in the court's order, the district court impermissibly credited the testimony of several City employees.  In addition to crediting the testimony of Adams regarding his knowledge of Martha's protected activity, the district court credited the testimony of "[v]arious City employees, both former and current, [who] testified at trial to the notion that the [water programs coordinator] position was in transition from a technical position . . . to one more focused on budgetary and financial issues of the water department."  Both Adams and Dumbauld testified to this notion, and the jury was not required to believe their testimony, as these City employees were not disinterested witnesses. Additionally, the district court improperly credited the testimony of Vander Kuy regarding her credentials, when the court stated that it found Vander Kuy "to be a credible witness."

Third, the district court did not construe the facts and draw all reasonable inferences from the facts in Martha's favor. *See Reeves*, 530 U.S. at 150 (stating that "the court must draw all reasonable inferences in favor of the nonmoving party").  Importantly, on the issue of whether Martha established pretext, the

12

district court gave no credence to her evidence at trial that Adams manipulated the scoring matrix to benefit the other candidates and to prejudice Martha. *See id.* at 152 ("[T]he court disregarded critical evidence favorable to petitioner—namely, the evidence . . . undermining respondent's nondiscriminatory explanation."). The court did not view the evidence in the light most favorable to Martha, particularly her evidence that several categories of the scoring matrix closely aligned with the credentials and experience of Cuellar and Vander Kuy. Instead, the court impermissibly viewed the evidence in the light most favorable to the City—that the water programs coordinator position was now a financial position and that Adams's scoring matrix appropriately reflected this change.

In conclusion, in determining whether to grant the City's renewed motion for judgment as a matter of law, the district court impermissibly weighed the evidence, made credibility determinations, and construed the facts against the jury's verdict. *See id.* at 150-51.

*4. The Evidence Was Legally Sufficient to Support the Jury's Verdict*

On appeal, Martha asserts that the evidence presented at trial was legally sufficient to support the jury's finding that the City unlawfully retaliated against Martha because she assisted in Terry's protected activities. Applying the proper standard of review, we agree that the evidence was sufficient to support the jury's verdict. In its renewed motion for judgment as a matter of law, the City made two arguments: (a) that no reasonable jury could find a causal connection between Martha's protected activity and the City's failure to hire her because there was insufficient evidence to show that Adams knew of Martha's assistance in Terry's protected activities; and (b) that no reasonable jury could find that the City's legitimate, non-retaliatory reason to hire Vander Kuy—that she was the best qualified candidate for the position—was a pretext for retaliation. Each of these arguments will be addressed in turn.

No. 11-10058

*a. Adams's Knowledge of Martha's Assistance in Terry's Litigation*

The City argues that a rational jury could not have concluded that the City unlawfully retaliated against Martha for her assistance in Terry's litigation because the decision-maker, Adams, did not know of her protected activity. The City contends that the evidence presented at trial only allowed jurors to impermissibly speculate to reach the conclusion that Adams knew of Martha's assistance in Terry's protected activities. However, viewing the evidence and the inferences therefrom in the light most favorable to Martha, a reasonable jury could have inferred that Adams was aware of her assistance in Terry's protected activities. Dumbauld, the City Manager and Adams's supervisor, testified that she was aware of both Terry's litigation against the City and Martha's assistance in his litigation, as she saw Martha at a mediation. Additionally, Dumbauld and Adams discussed the issue of interviewing Martha during Terry's pending litigation and agreed that the City should hire an outside employment consultant to conduct the final interviews for the position. From these facts, it was reasonable for the jury to infer that Dumbauld told Adams of Martha's assistance in Terry's litigation. Indeed, even the district court, in its order denying the City's motion for summary judgment, concluded that a reasonable person could infer that Adams knew of Martha's assistance in Terry's protected activities based on this circumstantial evidence. Thus, based on the evidence presented at trial, we conclude that a reasonable jury could have inferred that Adams knew of Martha's assistance in Terry's protected activities.[5]

---

[5] We note that, while this case was pending on appeal, the Supreme Court decided *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011), where the Court held that an employee who suffered an adverse employment action could bring a Title VII retaliation claim based on the protected activity of a co-worker who was also a close family member. *Id.* at 868-70. This Title VII retaliation claim was based on the employer's retaliation against the close family member. *Id.* at 867. However, the instant case was not tried under *Thompson*'s legal theory, as Martha's claim is that the City retaliated against *her*, not Terry. Therefore, *Thompson* is not directly applicable to our analysis.

14

No. 11-10058

### b. *The City's Reason Was a Pretext for Retaliation*

The parties dispute whether Martha produced substantial evidence to demonstrate pretext at trial. A plaintiff may establish pretext by showing that the employer's articulated reason for its conduct is false or unworthy of credence. *See Laxton*, 333 F.3d at 578. As explained above, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]." *Reeves*, 530 U.S. at 148. Therefore, whether Martha established pretext is important to our determination of whether the evidence supports the jury's verdict that the City unlawfully retaliated against Martha.

A plaintiff can demonstrate that an employer's reason is pretextual in various ways. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989) ("The evidence which petitioner can present in an attempt to establish that respondent's stated reasons are pretextual may take a variety of forms.") (citations omitted), *superseded on other grounds by statute*, Civil Rights Act of 1991, 42 U.S.C. § 1981; *see also Ramos v. Roche Prods., Inc.*, 936 F.2d 43, 48 (1st Cir. 1991) ("Pretext can be exposed in several different ways."). In the failure-to-promote context, the Supreme Court has instructed that a plaintiff may seek to demonstrate that an employer's reason was pretextual by, for instance, "showing that she was in fact better qualified than the person chosen for the position." *Patterson*, 491 U.S. at 187-88. However, the Court held that "[t]he District Court erred . . . in instructing the jury that in order to succeed [plaintiff] was *required* to make such a showing. There are certainly other ways in which [plaintiff] could seek to prove that respondent's reasons were pretextual." *Id.* at 188. The Court concluded that a plaintiff "may not be forced to pursue any particular means of demonstrating that respondent's stated reasons are pretextual." *Id.*

In the failure-to-hire context, courts have recognized many different ways that a plaintiff may establish pretext. For instance, a plaintiff can demonstrate

15

that she is the "clearly better qualified" candidate. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010). Also, a plaintiff may prove pretext by showing "[a]n employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision." *Id.* at 926 (citations omitted). Additionally, "[a]n employer's violation of its own normal hiring procedure may be evidence of pretext." *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1108 (11th Cir. 2001) (citation omitted), *overruled on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). Furthermore, a plaintiff may establish pretext by showing that an employer emphasized qualifications not pertinent to the job in selecting a candidate. *See Courtney v. Biosound, Inc.*, 42 F.3d 414, 421 (7th Cir. 1994). However, as indicated above, a plaintiff "is not limited to presenting evidence of a certain type" to establish pretext. *Patterson*, 491 U.S. at 187.

In the present case, the City's articulated, non-retaliatory reason for not hiring Martha was that Vander Kuy was the best qualified candidate, as indicated by the results of Adams's scoring matrix. At trial, Martha offered two strands of evidence to establish that the City's reason was pretextual. First, she argued that the City's reason was false because Adams manipulated the scoring matrix to prejudice Martha and benefit the other candidates, thereby artificially making Vander Kuy the best qualified candidate. Second, she argued that she was clearly better qualified than Vander Kuy for the water programs coordinator position.

With regard to Martha's first argument as to pretext, viewing the evidence and the inferences therefrom in the light most favorable to Martha, a reasonable jury could have inferred that Adams intentionally manipulated the scoring matrix to benefit the other candidates and prejudice Martha. Martha produced evidence at trial that Terry's discrimination lawsuit against the City was premised on the actions of Adams, his supervisor, who notified Terry that it was the City's intent to terminate his employment in ninety days. As explained

above, there was evidence from which the jury could have concluded that Adams had knowledge of Martha's assistance in Terry's lawsuit. Thus, the jury could have inferred a motive on the part of Adams to manipulate the scoring matrix to Martha's detriment. Additionally, Adams testified that he reviewed the candidates' applications before creating the scoring matrix and conceded that he could have manipulated the scoring matrix to favor one candidate over another.[6]

Martha also presented evidence that Adams emphasized qualifications—especially finance and business qualifications—in the scoring matrix that were not fairly represented in the official job description or the job posting. For instance, the scoring matrix awarded extra points for degrees in a business-related field.[7] The job posting lists as a qualification any combination of education and experience equivalent to the completion of a Bachelor's degree in Public Administration, Business Administration, Environmental Engineering, Chemistry, Biology, or a related field. Evidence introduced at trial indicated that if the City had a preference for certain educational requirements, such as degrees in a business-related field, these qualifications should have been listed in the preferences section of the job posting. Here, the job posting listed no such preferences. Additionally, Sherry Stephens, a former City employee who was involved in creating the job description for the water programs coordinator position, testified that only a Bachelor's degree was required for the position and that a Master's degree was unnecessary. However, under Adams's scoring

---

[6] Also, Martha introduced evidence at trial that Adams initially told a City employee that he did not review the candidates' applications before creating the scoring matrix, from which the jury could have inferred that Adams was attempting to cover up his actions.

[7] The scoring matrix awarded (a) 20 points for a Bachelor's degree, (b) 30 points for a Bachelor's degree in Finance, Accounting, or a related field, (c) 20 points for a Master's degree, and (d) 30 points for a Master's degree in Finance, Business Management, or a related field. Thus, an applicant who had a Bachelor's degree in Biology, like Martha, received 20 points total, while an applicant who had a Bachelor's degree in Business Administration and a Master's degree in Management, like Vander Kuy, received 100 points total.

matrix, fifty points out of the total of one hundred points in the education category were reserved for applicants with Master's degrees.

Furthermore, Martha presented evidence that some of the categories of the scoring matrix aligned very closely with the resume and experience of the other candidates. For example, both of the other candidates had degrees in a business-related field and Martha did not—resulting in the other candidates receiving two to five times more points in the education category. Martha argued that Adams's manipulation of the education category was determinative—even if Martha received full credit in every other category of the scoring matrix, she still would not have had the highest score of the candidates. Also, the scoring matrix gave many points to a candidate who had six or more years of experience in account management, which closely aligned with Vander Kuy's resume and was not specifically listed in the job posting. From this circumstantial evidence, viewed in the light most favorable to Martha, a reasonable jury could have inferred that Adams rigged the matrix so that Martha could not score the highest among the three candidates. *Cf. Vadie*, 218 F.3d at 374-75 (holding that sufficient evidence supported the jury's verdict that the employer retaliated against an applicant, because the jury could have inferred that the employer changed the position requirements to exclude that particular applicant from consideration).

Given our conclusion that a reasonable jury could have inferred pretext based on Martha's first argument that Adams rigged the matrix, we need not reach Martha's second, more difficult argument that she was clearly better qualified. In conclusion, a reasonable jury could have found that the City's reason for not hiring Martha was pretextual based on evidence indicating that Adams manipulated the scoring matrix to prejudice Martha and favor the other candidates. Under *Reeves*, because Martha presented substantial evidence at trial to establish her prima facie case and to establish pretext, a reasonable jury

could have concluded that the City unlawfully retaliated against her. *See Reeves*, 530 U.S. at 148.[8] "Ever mindful of the recent mandate of *Reeves* 'not to substitute [the court's] judgment for that of the jury and not to unduly restrict a plaintiff's circumstantial case of [retaliation],'" we hold that the City's evidence "is not of such magnitude that a reasonable jury could *only* find in [its] favor." *Laxton*, 333 F.3d at 585-86 (first alteration in original) (citation and internal quotation marks omitted). Based on the foregoing analysis, we reverse the district court's grant of judgment as a matter of law.

## B. The District Court's Grant of a New Trial

### 1. Standard of Review

We review a district court's grant of a new trial for abuse of discretion. *See Laxton*, 333 F.3d at 586 (citation omitted). "A decision to grant a new trial is . . . accorded less deference than a decision denying the grant of a new trial." *Id.* (citation omitted). "And where a new trial is granted on the ground that the verdict is against the weight of the evidence, we exercise particularly close scrutiny, to protect the litigants' right to a jury trial." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982) (citation omitted). A district court may grant a new trial if the jury verdict was against the great weight, and not merely the greater weight, of the evidence. *Laxton*, 333 F.3d at 586 (citation omitted). In making this determination, the "district court weighs all of the evidence, and it need not view it in the light most favorable to the nonmoving party." *Id.* (citation omitted). "This does not mean that a judge may order a new trial simply because he disagrees with the jury verdict." *Shows*, 671 F.2d at 930.

---

[8] The instant case does not involve "a 'rare' exception to *Reeves* where (1) the evidence conclusively reveals some other, nondiscriminatory reason for the [employer's action] or (2) the plaintiff's showing as to pretext is weak and the employer brings 'abundant and uncontroverted' evidence that its decision was not motivated by [retaliatory] animus." *Laxton*, 333 F.3d at 585 (citations omitted).

No. 11-10058

We review the evidence closely to ensure that this difficult standard has been satisfied. *Id.* Three factors guide our review: (1) the simplicity of the issues, (2) the extent to which the evidence is in dispute, and (3) the absence of any pernicious or undesirable occurrence at trial. *Id.* at 930-31 (citations omitted). "When all three factors are present, our deference to the jury is reinforced by our confidence in its ability to understand the issues, to evaluate credibility and sort through conflicting testimony, and to act reasonably and fairly in the absence of prejudicial influences." *Id.* at 931. "In this situation there is little, if any, need to defer to the judge as against the jury, and we will not affirm an order granting a new trial unless on review we are satisfied, independently, that the jury verdict was against the great weight of the evidence." *Id.* "When one or more of these factors are absent, however, our great deference to the court's firsthand experience of the witnesses, their demeanor, and the context of the trial, takes on special importance, and we will affirm a new trial order even if on our own review of the 'cold record' we are not convinced that the jury verdict was against the great weight of the evidence." *Id.* (citation and internal quotation marks omitted). "[W]hether or not the three factors referred to above are present," the "'great weight of the evidence' standard is not easily met," and "our standard of review on appeal . . . [is] a strict one." *Id.*

*2. The District Court Abused its Discretion in Granting a New Trial*

In the present case, the district court conditionally granted the City's motion for a new trial because it found that the jury's findings on liability and damages were against the great weight of the evidence. With regard to liability, the court reasoned that Martha failed to introduce evidence to establish her retaliation claim. With respect to damages, the court concluded that the verdict did not reflect Martha's "failure to properly mitigate her damages."

We must first determine whether any of the three *Shows* factors are

20

present in this case.    With regard to the first factor, Martha's Title VII retaliation claim presents a relatively simple issue.  *Cf. Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 256 n.6 (5th Cir. 1996) (finding that an age discrimination claim was a "relatively simple" issue).  With regard to the second factor, our caselaw indicates that this factor is present when only critical issues are in dispute.  *See Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980) ("In certain critical respects, the evidence was highly conflicting, but in many other respects it was undisputed."); *see also Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 717 (5th Cir. 2006) ("[A]lthough the evidence in this case was disputed, there were numerous areas of agreement between the parties."). In the instant case, several critical factual issues were disputed, such as whether Adams rigged the matrix, but there were many areas of agreement among the parties about the underlying facts.  Thus, the second *Shows* factor is present. With regard to the third factor, the trial was devoid of any pernicious occurrence. Thus, because the *Shows* factors are present, we need not "defer to the judge as against the jury," and we should not affirm the district court's order granting a new trial unless, upon our independent review, we are satisfied that the jury's verdict was against the great weight of the evidence.  *Shows*, 671 F.2d at 931.

With regard to the jury's verdict on liability, we hold that the verdict was not against the great weight of the evidence.  Based on our independent review of the record and on our analysis above, we find that Martha presented substantial circumstantial evidence from which a reasonable jury could have concluded that the City unlawfully retaliated against Martha.  *See Laxton*, 333 F.3d at 586 (reversing the district court's grant of new trial in a discrimination lawsuit because, contrary to the district court's conclusion, the plaintiff "did indeed rebut the proffered nondiscriminatory reason for her termination").

With regard to damages, a Title VII plaintiff suing for back pay has a duty to mitigate damages, meaning that the plaintiff "must use reasonable diligence

to obtain 'substantially equivalent' employment." *Sellers v. Delgado Coll.,* 902 F.2d 1189, 1193 (5th Cir. 1990) (citations omitted). "[T]he employer has the burden of proving failure to mitigate." *Id.* (citation omitted). The jury awarded Martha $243,000 in damages—three years of back pay plus benefits—which was the total amount that Martha requested. Therefore, the jury implicitly found that Martha did not fail to mitigate her damages.

After an independent review of the record, we hold that the jury's verdict on damages was not against the great weight of the evidence. At trial, there was conflicting evidence about whether Martha performed a diligent job search. The City provided evidence that between March 2007 and September 2009, Martha did not apply for any position in the City, county, or private business sector. However, Martha testified that she was looking for employment, but because she could not find substantially comparable job openings, she did not apply for any positions. The jury had the "power . . . to believe or disbelieve portions of the testimony of various witnesses." *Conway*, 610 F.2d at 367. The jury was entitled to credit Martha's testimony that she did not apply for jobs because she could not find substantially comparable employment. Therefore, based on Martha's testimony, there was sufficient evidence to support the jury's implicit conclusion that Martha properly mitigated her damages. The jury's verdict on damages was "not against any great evidentiary weight." *Id.*; *see id.* ("On this record, the jury's conclusions are at least as likely to be true as any others . . . .").

In sum, the district court abused its discretion in determining that the jury's verdict was against the great weight of the evidence. Therefore, we reverse the district court's grant of a new trial and remand the case to the district court with instructions to enter judgment for Martha in accordance with the jury's verdict.

## C. The District Court's Denial of Martha's Motion for Attorney's Fees

In its order, the district court denied Martha's motion for attorney's fees

and costs as moot, because the court had granted the City's renewed motion for judgment as a matter of law.  Because we reverse the court's grant of judgment as a matter of law, reverse the court's grant of a new trial, and remand the case to the district court with instructions to enter judgment for Martha, Martha's motion for attorney's fees and costs is no longer moot.  Thus, we reverse the court's denial of Martha's motion and, upon remand, instruct the district court to consider an amended motion from Martha regarding attorney's fees and costs.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment, REVERSE the court's grant of a new trial, REVERSE the court's order denying Martha's motion for attorney's fees and costs, and REMAND the case to the district court with instructions to enter judgment for Martha and to consider an amended motion for attorney's fees and costs.  The City shall bear the costs of this appeal.