# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2013

Lyle W. Cayce
Clerk

No. 11-20654

JOHN DANIEL,

Plaintiff - Appellant

v.

UNIVERSAL ENSCO, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-4140

Before DeMOSS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant John Daniel was terminated by his former employer, Defendant-Appellee Universal ENSCO, Incorporated ("UEI"), in a reduction-in-force. He filed suit against UEI for discrimination on the basis of age, religion, and national origin, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, and the Texas Commission on Human Rights Act ("TCHRA"), TEX.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20654

LAB. CODE § 21.051.  He also brings claims for retaliation by UEI in response to his complaints of discrimination, under Title VII, 42 U.S.C. § 2000e-3, and TCHRA, TEX. LAB. CODE § 21.055.[1]  The district court granted UEI's motion for summary judgment and dismissed Daniel's claims.  We now AFFIRM.

## FACTS AND PROCEEDINGS

Daniel was born a Muslim in Iran and immigrated to the United States in 1973.  A mechanical engineer by training,  he was hired by UEI[2] to serve as a Lead Mechanical Engineer and Senior Project Engineer.  Daniel began his tenure in July 2006, at the age of 62, in the Facilities Design Group managed by Vice President Pano Zhonga (the "Facilities Group").  Daniel worked under the immediate supervision of Mark Netzel, who reported to Zhonga.  Daniel contends that Netzel interfered in his delegated responsibilities, including denying him adequate resources to complete assignments.  Daniel states that in March 2007, Zhonga took away Daniel's title of Lead Mechanical Engineer, stripped him of supervisory authority, and later demoted him from Senior Project Engineer to Project Engineer.  In September 2007, Netzel issued Daniel an "Employee Warning Notice," documenting that Daniel had threatened Netzel during a dispute over project resources.  Daniel filed a complaint with UEI's Human Resources office ("HR"), alleging the Employee Warning Notice was the product of discrimination and retaliation.[3]

---

[1] Daniel's complaint also alleges discrimination due to his race, but he voluntarily dismissed that claim in his response to the motion for summary judgment, and no longer pursues it on appeal.

[2] UEI was acquired by a private equity firm in February 2008 and merged with another company to form United Pegasus International ("UPI").  We refer to Daniel's former employer and Appellee as UEI even when describing events that took place after the merger.

[3] A copy of Daniel's September 2007 complaint does not appear in the record.  Zhonga does not recall receiving or hearing of the complaint.

No. 11-20654

In December 2007, Zhonga assigned Daniel to a group headed by UEI Vice President John Andrus called the "Enbridge Project." Zhonga explained that Daniel: "had the symptoms of no team effort, having arguments with Netzel. And so I thought it would be good idea [sic] to give him second chance [sic] to work on another team, see how he does." Daniel states that Andrus denied him the staff and equipment necessary to perform his new job, and placed him in a substandard office. Andrus eventually became concerned with the quality and timeliness of Daniel's work, reaching, Andrus stated, "the point where we could no longer in our minds fairly bill the client for his time." In July 2008, Andrus returned Daniel to the Facilities Group earlier than planned. Within a month, Zhonga assigned Daniel to a third group, run by Vice President Kent Bigelow. Daniel states that by this point he had regained his original title of Senior Project Engineer and Lead Mechanical Engineer. Nonetheless, Daniel worked beneath two Jewish engineers he claimed discriminated against him based on his Iranian and Muslim heritage.

In spite of Daniel's reassignments, Netzel remained Daniel's official supervisor. In late 2008, Netzel solicited comment on Daniel's performance from supervisors at the Enbridge Project and Bigelow's group to assist in preparing a year-end performance evaluation. Netzel's December 8, 2008 performance evaluation (the "Performance Evaluation") assigned Daniel a rating of 3 out of 10, noting:

> John's project managers have given him an average rating for a Senior Project Engineer when it comes to paying attention to detail. John's project managers also indicated that his ability to cooperate with his cooworkers [sic] needs significant improvement. John must increase his skill set and marketability by being more flexible to meet client schedules, working more cooperatively with peers, taking a greater lead on developing his own work exhibits and further improving his quality control processes.

3

No. 11-20654

Daniel contested the Performance Evaluation. On January 19, 2009, he sent an e-mail to Andrus and two members of HR, with the subject line "Complaint for unfair performance evaluation." Daniel objected to not receiving copies of the comments Netzel relied upon in the Performance Evaluation, and Daniel pointed out occasions in which he had earned praise from superiors and clients for his work. On February 2, 2009, he sent HR officers another e-mail entitled, "Complaint against Mr. Pano Zhonga for his unlawful practices." He attached e-mails, documents, and statements to demonstrate Zhonga's "unfair, unjust and discriminatory practices."

In late December 2008, citing a decrease in business due to the struggling economy, UEI's senior leadership agreed to implement a reduction-in-force ("RIF"). UEI based the lay offs on employees' 2008 performance evaluations, with those receiving a 4 or below terminated in the first phase, beginning in January 2009, and those receiving a 5 or 6 dismissed later that year. In total, UEI fired 143 employees in the 2009 RIF, and those terminated generally were not offered employment elsewhere within UEI. Daniel, who had earned a 3 in his Performance Evaluation, was terminated in the first RIF phase, in mid-February 2009. UEI fired 17 employees in the Facilities Group, and, after Daniel was terminated, Zhonga did not hire a replacement for him.

After filing charges of discrimination and retaliation with the Texas Workforce Commission and the Equal Employment Opportunity Commission, Daniel initiated the present action.

**STANDARD OF REVIEW AND APPLICABLE LAW**

We review the district court's decision to grant summary judgment *de novo,* applying the same standards as the district court. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). We may award the moving party summary judgment if, viewing all evidence in the light most favorable to the nonmovant, the record demonstrates that there is no genuine issue of material

No. 11-20654

fact and that the moving party is entitled to judgment as a matter of law. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006); *see* Fed. R. Civ. P. 56(a).  A dispute gives rise to a genuine issue of material fact when the evidence permits a reasonable jury to rule in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A plaintiff may prove employment discrimination or retaliation with either direct or circumstantial evidence.  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010).  Daniel does not assert direct evidence that UEI discriminated or retaliated against him.  *See Fabela*, 329 F.3d at 415.  Daniel's case relies instead on circumstantial evidence, and we evaluate his discrimination and retaliation claims under federal and Texas law alike using the burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Evans v. City of Houston*, 246 F.3d 344, 349, 352 n.6, 352-55 (5th Cir. 2001); *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996).  Under the *McDonnell Douglas* framework:

> the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic

No. 11-20654

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007) (internal quotation marks omitted).

## DISCUSSION

### A.     Prima Facie Case

The first issue is whether Daniel has made out prima facie cases of either employment discrimination or retaliation.  We assume without deciding that Daniel has offered evidence to support a prima facie case of discrimination based on his termination, as well as his demotion in Zhonga's group and reassignment to the Enbridge Project and Bigelow's group.[4] *See Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) ("'The burden of establishing a prima facie case of disparate treatment is not onerous.'") (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  We also assume for the sake of argument that Daniel establishes a prima facie case that he was dismissed in the RIF in retaliation for his January and February 2009 e-mails objecting to his Performance Evaluation.[5]

---

[4] Daniel raises other actions taken against him that he argues might support a prima facie case of discrimination, such as the Performance Evaluation and reductions in his bonus. However, as the district court concluded, Daniel does not advance those arguments on the final prong of his prima facie case, for instance by arguing that similarly situated employees outside his protected classes were treated more favorably than him.  *See  Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009); 1 LEX K. LARSON ET AL.,  LARSON ON EMPLOYMENT DISCRIMINATION § 8.08(8) (2d ed. 2012) (describing that "almost every case" involving discrimination in the terms and conditions of the plaintiff's employment "is based on comparing the employer's treatment of [the plaintiff] to that of similarly situated workers"). As Daniel does not fully pursue those claims, we do not address them.

[5] Daniel also contends his September 2007 complaint concerning Netzel's Employee Warning Notice was a protected activity for which he suffered retaliation.  However, he concedes that he cannot demonstrate that the complaint is causally linked to his termination or to any other arguable adverse employment action taken against him, as required to construct a prima facie case.  *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).  We therefore do not address the September 2007 complaint.

## B.   *McDonnell Douglas* Burden-Shifting Analysis

Even granting Daniel the assumption that he has established prima facie claims, his case founders at the burden-shifting phase of the *McDonnell Douglas* analysis.  UEI first must "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Jones v. Flagship Int'l*, 793 F.2d 714, 725 n.11 (5th Cir. 1986); *see Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).  If the defendant produces a legitimate reason for its action, the plaintiff must raise evidence sufficient to create an issue of fact concerning the "ultimate question" of the employer's unlawful discrimination or retaliation to survive summary judgment.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).

UEI justifies the changes in Daniel's responsibilities and his reassignments with evidence Daniel underperformed at his job and got along poorly with his supervisors.  Zhonga reassigned Daniel to the Enbridge Project because of Daniel's struggles working in a team.  At the Enbridge Project, Andrus was disappointed in the caliber of Daniel's work and returned him to the Facilities Group.  Daniel's Performance Evaluation rested on the negative reviews generated by his conduct during that time.  Daniel's documented shortcomings as an employee are a legitimate reason for his demotion and reassignment.  *See Davis v. W. Cmty. Hosp.*, 786 F.2d 677, 683 (5th Cir. 1986).  UEI also advances sound ones too for Daniel's firing: UEI's financial struggles requiring the RIF and Daniel's poor Performance Evaluation that qualified him for termination.  *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  We affirm the district court's findings that UEI has sustained its burden of producing legitimate rationales for the actions taken in Daniel's case.

The burden returns to Daniel to raise a genuine issue of fact that UEI's non-discriminatory and non-retaliatory rationales are pretextual.  The district court correctly found that Daniel offered only conclusory statements that

No. 11-20654

Zhonga, Netzel, Bigelow, and the Jewish engineers in Bigelow's group discriminated or retaliated against him. That showing is inadequate to sustain Daniel against summary judgment, as it does not provide a basis on which a reasonable jury could rule in his favor. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir. 1996) (en banc) (finding that in response to the defendant's legitimate rationale of poor work performance, the plaintiff "offered only his personal perceptions and speculation that USAA's decision to remove him from the position was based on his age"), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

He also contends the Performance Evaluation was discriminatory, and that it rendered his termination in the RIF discriminatory for its reliance on it. Nonetheless, he does not specify beyond conjecture how the performance concerns his supervisors documented between 2007 and 2008 were pretextual. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) ("'Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient.'") (quoting *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443-44 (5th Cir. 1995)). Moreover, his argument of a malicious link between the Performance Evaluation and the RIF is not supported by the record. Netzel issued the Performance Evaluation on December 8, 2008, but Daniel has not identified record evidence that the senior UEI officials who met to discuss the RIF did so prior to late-December. Daniel has not identified evidence that his evaluating supervisors anticipated the Performance Evaluation would trigger discharge under the later-enforced RIF.

Daniel further argues that UEI continued to hire workers younger than him even as the RIF proceeded apace. He points to a spreadsheet entry indicating that UEI hired a 44-year-old Senior Project Engineer in February 2009. We require more of plaintiffs attempting to show age discrimination in the

No. 11-20654

form of a younger replacement, including evidence that the plaintiff was "clearly better qualified" than the new hire. *Nichols*, 81 F.3d at 42; *see Moss*, 610 F.3d at 923. The spreadsheet entry provides no such detail. Finally, Daniel claims he was the first engineer terminated in the 2009 RIF and places significance on that contention. Nonetheless, he does not dispute that the Performance Evaluation qualified him for the initial phase of lay offs according to the RIF. Even if it were true that Daniel was the first engineer let go, it would not make pretextual UEI's assertion that the RIF was untainted by discrimination.

Even if we assume Daniel has established prima facie cases of discrimination and retaliation, the district court properly found that he did not provide evidence to create an issue of fact concerning the legitimate reasons UEI puts forward for its actions. We therefore AFFIRM.